# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————

No. 20-4588

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## TIMOTHEUS CUNNINGHAM

*Defendant – Appellant,*

———————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

———————————

## MEMORANDUM BRIEF IN SUPPORT OF APPEAL
## FROM DISTRICT COURT'S ORDER DENYING
## RELEASE PENDING TRIAL

Anthony Martinez,

FEDERAL PUBLIC DEFENDER FOR THE
  WESTERN DISTRICT OF NORTH CAROLINA

Melissa S. Baldwin
Assistant Federal Public Defender
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720

*Counsel for Appellant*

## Introduction

"[F]ederal defendants who are detained before trial are more likely to go to federal prison and to serve longer sentences there…." J.C. Oleson, et al., *Pretrial Detention Choices and Federal Sentencing,* 14 Federal Probation Journal Vol. 78 No.1 (June 2014).[1] Indeed, a study found that people detained pretrial are three times more likely to be sentenced to prison than similar people who are released, and pretrial detainees' prison sentences are more than twice as long as sentences imposed on similar people who are released. Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* 10 (Laura & John Arnold Found. 2013).[2]

In the federal criminal justice system, pretrial release is "appropriate for the majority" of defendants. S.Rep. No. 225, 98th Cong., 1st Sess. 7, *reprinted in* 1984 Code Cong. & Ad.News at 3189. Pretrial detention, on the other hand, is reserved for "a small but identifiable group of particularly dangerous defendants" for "whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." *Id.* at.

---

[1] Available at < https://www.uscourts.gov/federal-probation-journal/2014/06/pretrial-detention-choices-and-federal-sentencing> (last accessed Dec. 3, 2020).

[2] Available at <https://craftmediabucket.s3.amazonaws.com/uploads/PDFs/LJAF_Report_state-sentencing_FNL.pdf>.

6-7, *reprinted in* 1984 Code Cong. & Ad.News at 3189. The Bail Reform Act achieves this balance by ensuring that pretrial detention is "considered only as a last resort, after the judicial officer has considered every feasible alternative and has expressly rejected each of them." Govt. Br. at 37, *United States v. Salerno*, 1986 WL 727530 (U.S. Nov. 1986).

The Western District of North Carolina, where the challenged detention order was entered, has the highest detention rate in the Fourth Circuit and has held this distinction since at least fiscal year 2015.[3] Last fiscal year, 72.8% of defendants in the Western District of North Carolina were detained.[4] In fact, the Western District of North Carolina consistently ranks as a district with one of the lowest pretrial release rates in the country.[5]

This case demonstrates that the Western District's high detention rate may be the result of misapplying the Bail Reform Act. The defendant, Timotheus

---

[3] U.S. Courts, "Federal Pretrial Services – Defendants Released and Detained, Excluding Immigration Cases" (Reporting Periods: September 30, 2019; September 30, 2018; September 30, 2017; and September 30, 2016). Available at <https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables> (use "Search by table number" and enter "H-14A").

[4] U.S. Courts, "Federal Pretrial Services – Defendants Released and Detained, Excluding Immigration Cases" (Reporting Period: September 30, 2019). Available at < https://www.uscourts.gov/statistics/table/h-14a/judicial-business/2019/09/30>.

[5] In FY 2018, WDNC had the seventh lowest release rate; FY 2017 WDNC had the ninth lowest release rate, and in FY 2016 and 2015 WDNC had the 12th lowest release rate amongst the 93 districts. *See* U.S. Courts, supra at n.3.

Cunningham, was arrested by Charlotte police in June 2019 for possessing a gun as a felon. The state court released him on conditions, and for the next 16 months he complied with all of his bond conditions, maintaining steady employment, supporting his family, and providing critical home-schooling supervision to his young children during a global pandemic while his wife worked full-time. Nevertheless, when authorities brought him into federal court in October 2020 for that same firearm offense, the district court found that he presented a safety risk that could not be redressed with conditions and ordered him detained. This detention order is premised on clear errors in the application of the Bail Reform Act, 18 U.S.C. § 3142, as well as clearly erroneous factual findings on Mr. Cunningham's dangerousness. Because of these errors, this Court should reverse the detention order.

## Jurisdictional Statement

The United States District Court for the Western District of North Carolina has jurisdiction over this criminal case under 18 U.S.C. § 3231. This Court has jurisdiction to review the district court's detention order in this criminal case under 18 U.S.C. § 3145(c), 28 U.S.C. § 1291, and Federal Rule of Appellate Procedure 9(b).

## Statement of the Case

On October 15, 2020, the district court detained Mr. Cunningham pending prosecution of his felon-in-possession-of-a-firearm charge. The relevant facts concerning the appeal of this detention order are outlined below.

3

**1. State authorities arrest Mr. Cunningham for possessing a firearm and grant him pretrial release.**

Charlotte-Mecklenburg police arrested Mr. Cunningham for possessing a firearm as a felon on June 22, 2019. Sealed Supplemental Appendix, Pretrial Services Report, Dkt. #6 at 7 (hereinafter "Sealed Supplemental Appendix"). Following the arrest, a risk assessment found Mr. Cunningham was not a high risk to the community and recommended release on the lowest level of supervision. Detention Hearing Transcript, at 5-7, 10, attached as Exhibit C. The state court released Mr. Cunningham back into the community on conditions. *Id.* at 7.

Because Mr. Cunningham was placed on the lowest level of supervision (also known as the "administrative level"), his release conditions were to not receive new charges, make court appearances, and keep his case manager updated on his contact information. *Id.* at 6.[6]

**2. About sixteen months later the federal government moves to detain Mr. Cunningham on a federal charge related to that same firearm possession.**

On December 18, 2019, a federal grand jury charged Mr. Cunningham with violating 18 U.S.C. § 922(g)'s prohibition on a felon possessing a firearm, based on

---

[6] Mecklenburg County Pretrial Services has three levels of supervision: (1) "administrative" is the lowest supervision level; (2) "standard" is the middle supervision level, which imposes additional requirements beyond the administrative level; and (3) "intensive" is the highest supervision level, which requires more interaction with the case manager on a regular basis. Exh. C at 6.

the same conduct underlying his state charges. Indictment, Dkt. #1. Federal authorities didn't arrest him until October 14, 2020. Returned Arrest Warrant, Dkt. #7. Mr. Cunningham's state case manager testified that she did not have the ability to search for federal arrest warrants, Exh. C at 8, and the record does not explain why federal authorities waited ten months to arrest him. Despite having waited nearly a year to arrest Mr. Cunningham on the pending charges, at his initial appearance on October 15, 2020, the government moved for his detention, asserting that he was a danger to the community. Docket Report, Minute Entry for "Initial Appearance" on 10/15/2020; Exh. C at 3-4.

### 3. The United States Pretrial Services Report.

A U.S. Probation Officer prepared a pretrial services report that detailed Mr. Cunningham's criminal history, as well as background information, and recommending that he be detained due to both a safety and flight risk. Sealed Supplemental Appendix. In making this recommendation, the report simply listed— without explanation—risk factors for flight and dangerousness. *Id.* at 8. Those factors were: prior arrests and convictions; violent behavior history; pattern of similar criminal activity; pretrial, probation, parole and supervised release status or compliance; criminal activity while under supervision; history of weapons use; and criminal history. *Id.* The report, however, failed to explain how any particular cited factor actually applied to Mr. Cunningham. *Id.* So, for example, it claimed there was a

5

"pattern of similar criminal activity[,]" but didn't identify that pattern and cited a

"history of weapons use" when his criminal history indicates a single weapon

allegation in his not-yet-proven offense of arrest. *Id.*

    The report's risk factors predominately involved Mr. Cunningham's criminal

history. His criminal history, however, includes a single felony conviction and ten

misdemeanor convictions. *Id.* at 5-7. His felony conviction was for an unarmed

federal bank robbery in 2004. *Id.* at 5; Case No. 3:04-cr-299 (WDNC), Dkt. #3

Indictment (charging violations of 18 U.S.C. § 2113(a) and § 2113(b)).[7] Notably, the

Western District of North Carolina *released* Mr. Cunningham pending trial on that

bank robbery. Sealed Supplemental Appendix at 5 (noting there was a bond violation).

*See also United States v. Cunningham*, Case No. 3:04-cr-299 (WDNC), Dkt. Entry for

01/18/2005 (entering unsecured bond and order setting conditions of release).[8] And

he was ultimately sentenced to a mere 34 months of imprisonment for his only felony

conviction. Sealed Supplemental Appendix at 5.[9]

---

[7] Mr. Cunningham's 18 U.S.C. § 2113(a) bank robbery involves merely the use of force, violence, or intimidation to take or attempt to take bank property. 18 U.S.C. § 2113(a). Whereas, a violation of § 2113(d) covers bank robberies where the defendant assaults any person or puts in jeopardy the life of any person by the use of a dangerous weapon or device. 18 U.S.C. § 2113(d).

[8] An arrest for misdemeanor larceny led to his bond being revoked. *United States v. Cunningham*, Case No. 3:04-cr-299, Motion for Bond Revocation at Dkt. #14.

[9] The median imprisonment length for a robbery in the Western District of North Carolina was 41 months. U.S.S.C., *Statistical Information Packet, Fiscal Year 2016: District of North Carolina*, 10. Available at

As to his misdemeanor convictions, the earliest was a driving while intoxicated in 1999, when he was 20 years old. *Id.* at 5.[10] Another eight misdemeanor convictions occurred between 2008 and 2012. *Id.* at 5-7. These included:

- a DWI in 2010;
- two possessions of drug paraphernalia in 2008 and 2012;
- two larcenies in 2011;
- shoplifting/concealment of goods in 2012; and
- one consumption of alcohol on city property and one open container violation in 2011.

In 2012, Mr. Cunningham completed an 8-month inpatient drug treatment program as a condition of his probation. *Id.* at 5. Following 2012, he was convicted only once, his most recent crime, which was in 2013 for a public disorderly conduct misdemeanor. *Id.* at 7.[11]

The Report also detailed Mr. Cunningham's personal characteristics, including long-held roots in Charlotte. *Id.* at 2-3. He was born in Charlotte and most of his family still lives in Charlotte. *Id.* at 2. He has been married since 2004 and has three young children aged 11, 9, and 3 years old. *Id.* at 3. He had been employed full- time

---

<https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2006/ncw06.pdf>.

[10] Because Mr. Cunningham was not yet 21 years old, it was criminal for him to drive a vehicle "at any time while he has remaining in his body any alcohol." N.C. Gen. Stat. § 20-138.3(a).

[11] After this conviction, the report indicates there were only two dismissed traffic infractions. Sealed Supplemental Appendix at 6.

7

with the same employer since 2009. *Id.* But just about a week prior to his arrest and detention, he scaled back to part-time weekend work as a forklift operator so that he could home-school his children during the pandemic and his wife could work full-time. *Id.;* Exh. C at 12.

### 4. **The detention hearing and order of detention.**

The government advocated for detention because Mr. Cunningham "does pose a danger to the community and there is some risk that he will not follow the Court's order if released based on his prior conduct and probation violations." Exh. C at 3-4. The government's argument for detention included three assertions. First, the government recited the facts supporting the charged offense, which was police observing him with an open liquor bottle outside a parked car, police then seeing a .38 caliber revolver inside on the driver's seat when he put the bottle into the car, and a post-arrest statement that he possessed the firearm to protect his family. *Id.* at 2-3. Second, the government pointed to the defendant's prior criminal history. *Id.* at 3. And third, the government speculated that Mr. Cunningham "might have some kind of a drinking problem" where he was drinking with a firearm and previously drove after drinking. *Id.* at 3.

The defense called Mr. Cunningham's case manager at Mecklenburg County Pretrial Services, Andrea Moore, who had been supervising Mr. Cunningham's release on his state felon-in-possession charge before his federal detention. Exh. C. at 4-5.

8

Ms. Moore testified that Mr. Cunningham was fully compliant with his rules on

pretrial release. *Id.* at 6-7. He made his court appearances, kept her apprised of his

contact information, and his employer had no concerns. *Id.* at 6-8. Indeed, Ms. Moore

testified that Mr. Cunningham contacted her *more* than what his minimum

requirements were. *Id.* at 7.  Ms. Moore could verify whether Mr. Cunningham

received any state warrants or had interactions with law enforcement and conducted

monthly background checks on him, and she testified that Mr. Cunningham did not

get charged with any new offenses while on release. *Id.* at 7-8, 10. In her opinion, with

15 years of experience as a case manager in the criminal justice and social work fields,

Mr. Cunningham was neither a flight risk nor a danger to the community. *Id.* at 5, 7-8.

The government very briefly cross-examined Ms. Moore, eliciting that she had

not been to Mr. Cunningham's house and could not testify that he did not possess a

firearm or had not been drinking and driving during his release. *Id.* at 9.[12] The

Magistrate Judge then asked if Mr. Cunningham was on unsecured bond, which he

was, but Ms. Moore could not recall how much. *Id.* at 10.

---

[12] Even in the federal system, the judiciary's policy is that probationary searches be
supported by reasonable suspicion. *See* U.S. Courts, *Overview of Probation and Supervised
Release Conditions*, Chap.3: Search & Seizure (proposing a condition that requires
reasonable suspicion to search, which "deter[s] criminal conduct and permit[s] a
probation officer to intervene quickly when reasonable suspicion exists that a
defendant has engaged in criminal conduct or otherwise violated a condition of
supervision"). Available at <https://www.uscourts.gov/services-forms/search-
seizure-probation-supervised-release-conditions>.

9

The defense then argued for his release on conditions. *Id.* at 11. It emphasized that Mr. Cunningham's offense does not carry a presumption of detention. *Id.* at 13.[13]

Defense counsel explained that Mr. Cunningham has the support of his brother and wife, who were in the courtroom, and "hold[ ] him responsible for his behaviors." *Id.* He has a stable residence in Charlotte with his wife and three children. *Id.* at 11-12. He worked full-time until he recently switched to a part-time job as a forklift operator on the weekends, so that he could homeschool his children during the pandemic while his wife took on the primary breadwinner role. *Id.* at 12.

The defense also relied on the neutral state pretrial case manager's testimony that Mr. Cunningham was not a danger, performed well on release, and abided by all his conditions. *Id.* at 14. The defense also addressed his criminal history, noting that

---

[13] Congress has directed that judicial officers apply a rebuttable presumption to certain defendants that no combination of release conditions will reasonably assurance their appearance and community safety. 18 U.S.C. § 3142(e)(3). Those defendants are persons for whom there is probable cause to believe that they committed:

(A) an offense punishable by ten years or more by the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46;
(B) an offense under 924(c), 956(a), or 2332b;
(C) an offense listed in18 U.S.C. § 2332b(g)(5)(B) with a maximum sentence of ten years or more;
(D) an offense under chapter 77 for which the maximum sentence is 20 years or more; or
(E) an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1)-(a)(4), 2260, 2421-23, or 2425 of this title.

18 U.S.C. § 3142(e)(3)(A)-(E).

his last conviction was 7 years ago for a misdemeanor and since then he just had some

dismissed traffic violations. *Id.* at 15.

The defense then pleaded with the court to set "any condition of release." *Id.* at

16. If his residence was a concern, the court could direct pretrial services to do a

search and review its propriety. *Id.* at 15. If the court was concerned about alcohol

consumption, "allow him to have substance abuse treatment[,]" but he does already

attend Alcoholics Anonymous meetings. *Id.* at 16. The court could also order a

secured bond or place him on ankle monitoring, "whatever your Honor believes is

appropriate." *Id.* at 16.

When the court then turned to the government, the government argued that

his state case manager only ran a criminal check to see if he had new charges and had

his contact information. *Id.* at 16. It then contrasted Ms. Moore's actual supervision

experience over the last 16 months with the federal probation office's "eight-page

report" with a dangerousness assessment that simply listed eight factors. *Id.* at 17.

At the conclusion of the detention hearing, the magistrate judge summarily

ruled that "[t]he Court will order him detained." *Id.* at 18. A three-page detention

order followed, which simply checked seven boxes. Detention Order, Dkt. #8,

attached as Exhibit B. There was a checkmark that the defendant was eligible for

detention by a government motion under 18 U.S.C. § 3142(f)[14] and one that the government had proven by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. *Id.* at 1-2. The order also checked five boxes as "the reasons for detention[,]" including: weight of evidence against the defendant is strong; prior criminal history; history of violence or use of weapons; history of alcohol or substance abuse; and prior violations of probation, parole, or supervised release. *Id.* at 3.

### 5. On appeal to the district court, the detention order is affirmed under *de novo* review.

After the magistrate judge entered the detention order, the defense appealed that order to the district court, thereby triggering a *de novo* review of the pretrial release or detention inquiry. Notice of Appeal, Dkt. #11; *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985).

On *de novo* review, the district court affirmed the detention order. Order, Dkt. #15, attached as Exhibit A. The district court found "that detention is appropriate as no condition or combination of conditions will reasonably assure the safety of any

---

[14] This provision authorizes a detention hearing where the government moves for detention in a certain cases. 18 U.S.C. § 3142(f). Mr. Cunningham's case was one such case because it included a "felony…that involve[d] the possession…of a firearm." 18 U.S.C. § 3142(f)(1)(E).

other person and the community. *Id.* at 1. To support this finding, the district court cited the strength of evidence against the defendant and his criminal history to "conclude[ ]…that defendant's release would pose a serious danger to others." *Id.* at 2-4.

As to criminal history, the district court relied on the one violent felony conviction for an unarmed federal bank robbery 16 years ago, the Pretrial Services Report's list of risk factors, and the boxes checked in the magistrate judge's detention order. *Id.* at 3. The court also cited his supervised release revocation in 2009, DWI convictions in 1999 and 2011, and "a long history of misdemeanor convictions," some of which occurred more than a decade ago. *Id.* at 3.

The district court acknowledged Ms. Moore's testimony that she did not believe Mr. Cunningham posed a danger, *id.* at 3. But the court's order did not consider the facts Ms. Moore described in her testimony that led her to make this conclusion, such as a risk assessment deeming him low risk, his compliance with pretrial release rules, including making court appearances, maintaining contact with her, and not receiving any new charges. *Compare* Exh. A at 3-4 *with* Exh. C at 4-11. The court dismissed this opinion, because Ms. Moore's "supervision was limited to running his criminal record," she had not been to his home and had "no knowledge" of Mr. Cunningham having any substance abuse issues or possessing a firearm during her supervision. Exh. A at 3-4.

13

Although the district court "conclude[d]…that defendant's release would pose a serious danger to others[,]" it made no findings about what that "danger" is, nor did it consider whether any particular release condition could potentially ameliorate this unspecified danger, i.e. "reasonably assure the safety of any other person or community." *See generally* Exh. A.

The day after the district court affirmed the detention order, Mr. Cunningham filed a Notice of Appeal of the Detention Order with this Court. Notice of Appeal, Dkt. #16.

## Standard of Review

"The standard of review for pretrial detention orders under 18 U.S.C. § 3145(c) is one of independent review, with deference to the determination of the district court." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (internal quotations and citations omitted). This Court reviews the district court's final detention order for clear error. *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989) (en banc) (citing *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985)).

Under clear-error review, this Court does not reverse a lower court's factual findings simply because it would have reached a different decision in the case. *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012). Nevertheless, while the review is "deferential," it is "not toothless." *Id.* at 452. "[A]n appellate court may properly be 'convinced' that a 'mistake' in fact-finding has been made" where the findings "were

14

induced by an erroneous view of the controlling legal standard, or are not supported by substantial evidence, or were made without properly taking into account substantial evidence to the contrary or are against the clear weight of the evidence considered as a whole." *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983) (internal citations omitted). "[T]he clearly erroneous rule *does not* protect findings made on the basis of the application of incorrect legal standards." *Consol. Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 128 (4th Cir. 1995) (emphasis added). And "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Miller*, 720 F.2d at 361 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## Argument

### I.   The district court's clear errors require vacating the detention order.

The district court committed four reversible, clear errors in ordering Mr. Cunningham be detained pretrial under 18 U.S.C. § 3142. First, the district court misapplied the legal standard by failing to consider whether any release conditions could ameliorate whatever risk was posed by Mr. Cunningham's release. Second, the district court failed to consider two factors that U.S.C. § 3142(g) expressly requires it to consider in making a pretrial detention determination. Third, the district court failed to account for substantial contradictory evidence in reaching its finding,

15

including Mr. Cunningham's completion of an 8-month inpatient substance abuse treatment program and unrebutted, direct evidence that he complied with pretrial release without any issues for the 16 months immediately preceding his detention hearing while under state supervision for the very acts he was being charged with in his federal case. And finally, the district court's finding that the government proved by clear and convincing evidence that no release conditions could reasonably assure the community's safety was against the clear weight of the evidence.

### A.    The district court clearly erred by improperly applying the legal standard.

A district court "go[es] awry in arriving at its factual findings" and commits clear error when it "labored under an improper view or misconception of the appropriate legal standard." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 379 (4th Cir. 1995). The district court made such an error here.

### 1.    The district court misapplied the pretrial detention standard by finding that *a* safety risk satisfied the government's burden of proof to detain.

Pretrial detention is authorized only if "no condition or combination of conditions will reasonably assure…the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Here, the district court misapplied this legal standard by finding that because Mr. Cunningham presented a safety risk to the

community, this necessarily meant no conditions existed to reasonably assure the community's safety. Exh. A.

The district court's analysis was that because the "defendant's release would pose a serious danger to others[,]" no combination of conditions would reasonably assure the community's safety. *Id.*. This application is clearly erroneous in the same vein as that found in *Jiminez*, 57 F.3d 369. There, the district court found that a Title VII plaintiff met his burden of proving invidious discrimination because he proved that the college's proffered reason for termination was not credible. *Id.* at 378. This Court explained that "rejection of the defendant's proffered reason—standing alone—does not *compel* the ultimate conclusion that the defendant unlawfully discriminated[,]" as the trial court found, but rather, it was simply a factor that "may enter the calculus for determining this conclusion." *Id.* This Court reversed because the trial court clearly erred by misapplying the legal standard. *Id.* The misapplication constituted reversible clear error. *Id.*

Just as the *Jiminez* court could not find invidious discrimination simply by rejecting the defendant's proffered reason for termination, the district court here cannot find that no combination of conditions will reasonably assure the community's safety by simply finding that Mr. Cunningham's release poses a safety risk. That finding alone does not satisfy the pretrial detention standard; *additionally*, that risk must be one that cannot be reasonably assured against through release conditions. 18

17

U.S.C. § 3142(e)(1). The district court was thus "obliged to consider whether any conditions existed that would adequately mitigate" the risk Mr. Cunningham's release posed. *United States v. Sabhnani*, 493 F.3d 63, 72 (2d Cir. 2007) (vacating a detention order because government failed to show that no conditions could be imposed to assure defendants' presence in court). It failed to do so.

Here, the defense pleaded with the court to set "any conditions" and offered a number of proposals, such as a home inspection by probation, GPS location monitoring, and substance abuse treatment. Neither the magistrate's order nor the district court's order even consider, much less reject the efficacy of these possible conditions or any others. *See* Exhs. A-C. The record simply contains no findings on, or consideration of, possible release conditions. *See generally* Exh. A.[15]

Considering possible release conditions was just as important as identifying a safety risk. *See* 18 U.S.C. § 3142(e)(3). Other courts have considered release conditions and released similar defendants on conditions that provided reasonable assurance of the community's safety. For example, in *United States v. Long*, No. 7:20-cr-68, the Eastern District of North Carolina released a defendant charged with being a felon in

---

[15] To the extent the district court believed it was sufficient to summarily assert that "no condition or combination of conditions will reasonably assure the safety of any other person and the community[,]" Exh. A at 1, it was wrong. *Antone*, * 169 ("If after reading the opinion, we cannot understand how the district court came to its conclusions, then we will be unable to perform a cogent analysis on its merits.").

18

possession of a firearm to the custody of his mother and invited the Probation Office to recommend further conditions, such as location monitoring. Order, Dkt. #26. The district court found that the government had not met its burden of showing by clear and convincing evidence that no combination of conditions could assure the defendant's appearance and community safety. *Id.* Although the evidence against the defendant was strong, and he had a lengthy criminal history, the district court balanced this against the facts that his history included many misdemeanors, with the last serious conviction occurring more than a decade ago. *Id.* That same court released another 18 U.S.C. § 922(g) defendant, over government objection, to home detention with GPS monitoring. *United States v. Flournoy*, Case No. 5:20-cr-315 (EDNC).

Even in the Western District of North Carolina, the district court has released a similar defendant was released on conditions that reasonably assured community safety. *United States v. Adam Fowler*, Case No. 1:19-cr-112 (WDNC). There, the defendant had a similar detention recommendation from the federal probation office that cited several factors tied to his criminal history, substance abuse, and prior noncompliance with supervision, but the court released him on conditions, including not possessing a firearm, refraining from using alcohol or narcotics, and submitting to drug testing. Order Setting Conditions of Release, Dkt. #11. Mr. Fowler ended up doing well on pretrial release and was ultimately given a significant downward variance at sentencing to a probationary sentence. *See* Def. Sentencing Memo, Dkt.

19

#30 at 1 (offense level 17 in criminal history category IV recommended 37 to 46 months imprisonment); Judgment, Dkt. #31 (sentenced to 60 months of probation).

These other cases are not to show release was mandatory, but to highlight the nature of the district court's error here. They demonstrate that courts can and have devised conditions to release similar § 922(g) defendants that reasonably assure community safety. The district court here, however, never engaged with possible release conditions because of its misapplication of 18 U.S.C. § 3142. It found that because, in its view, Mr. Cunningham's release presented a danger to the community, the government therefore had met its burden of showing by clear and convincing evidence that no combination of conditions could reasonably assure the community's safety. The district court was required—but failed—to proceed with the second analytic step of considering whether any combination of release conditions could provide reasonable assurance against that risk. 18 U.S.C. § 3142(c) (enumerating a non-exhaustive list of possible release conditions); 18 U.S.C. § 3142(e) (authorizing pretrial detention only "if…the judicial officer finds no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"). This was clear error requiring this Court to vacate the detention order.

**2. The district court considered only two of the four factors it was required to consider in its detention determination.**

Section 3142(g) enumerates four factors that a judicial officer "shall…take into account" when determining whether someone should be released on conditions or detained. 18 U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* Although the district court recited the standard's four factors, its analysis considered only two of those factors—weight of the evidence and the defendant's history and characteristics. Exh. A at 2-4. The district court did not consider the nature and circumstances of the offense charged or the nature and seriousness of the danger Mr. Cunningham's release would pose. *See id.*

First, while the district court did note that Mr. Cunningham was charged with violating 18 U.S.C. § 922(g) and the evidence against him was strong, nothing in the record suggests that the court considered the nature and circumstances of the charged offense as required by 18 U.S.C. § 3142(g)(1). *See* Exh. A at 1-4. Not all felons-in-possession-of-firearms are the same. As then-Chief Judge Breyer recognized, "simple [firearm] possession, even by a felon, takes place in a variety of ways…many, perhaps most, of which do not involve likely accompanying violence." *United States v. Doe*, 960

21

F. 2d 221, 225 (1st Cir. 1992). Here, the government's proffer concerning Mr. Cunningham's particular violation suggests his possession was the less-culpable variety. There was no indication he was using (or ever used) the firearm in relation to another criminal offense, and he explained to police that he had it to protect his family. Exh. C at 2-3. But regardless of how one might characterize Mr. Cunningham's charged offense is, there is no indication that the district court considered the nature of the circumstances of the charged offense in its pretrial detention determination. That alone is error.

Even more troubling, however, is the district court's failure to consider "the nature and seriousness of the danger" posed by Mr. Cunningham's release. 18 U.S.C. § 3142(g)(4). The district court did find that Mr. Cunningham's release posed a serious danger, Exh. A at 4, but this finding was limited to the mere existence of some degree of danger. Yet, the "nature and seriousness of the danger" factor requires the court to take into account *how* the release is dangerous and *to what extent*. For example, there may be serious danger of fraudsters recidivating on release, but the particular nature and severity of that danger differs from the indigent person who took advantage of food stamps and a Madoff-like Ponzi operator. Maybe one, both, or neither will be appropriate for release, but § 3142(g) directs the district court to, at a minimum, consider "the nature and seriousness of the danger" posed by each when making a pretrial detention determination.

22

Here, the district court did not even identify what danger was posed by Mr. Cunningham's release, let alone indicate it considered "the nature and seriousness of [that] danger." 18 U.S.C. § 3142(g)(4). This failure dovetails with the previously explained error of not considering possible release conditions. For example, the government suggested Mr. Cunningham may have some drinking problem, and the district court cited his 1999 and 2001 DWI convictions, but there is no finding that Mr. Cunningham actually posed a danger of drinking while driving if released. If this was the danger and the district court so found, this would naturally lead to considering release conditions that prohibit alcohol consumption or driving, getting treatment, or even home detention with GPS monitoring. Instead, we don't know what danger the district court believed Mr. Cunningham's release might pose and thus what conditions might ameliorate that risk.

Section 3142(g) plainly states that the judicial officer "shall consider" these factors in making its pretrial detention determination. 18 U.S.C. § 3142(g). The district court failed to consider the nature and circumstances of Mr. Cunningham's charged offense and the nature and seriousness of the danger posed by his release. This Court should therefore be left "with the definite and firm conviction that a mistake has been committed." *Miller*, 720 F.2d at 361.

23

**B.    The district court's finding on Mr. Cunningham's dangerousness is clearly erroneous.**

**1.    The district court failed to account for a substantial body of contradictory evidence.**

This Court "may discern clear error when a court makes findings without properly taking into account substantial evidence to the contrary." *Wooden*, 693 F.3d at 451 (district court's finding that defendant was not sexually dangerous for civil commitment purposes was clearly erroneous). In other words, a district court's factual findings are "clearly erroneous where the court has failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation." *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (Sotomayor, Cir.J.). Such a clear error was made here, where the district court's finding that no conditions could reasonably assure the community's safety failed to account for two key pieces of contradictory evidence.

First, the district court predominately based its detention decision on Mr. Cunningham's criminal history, but failed to account for Mr. Cunningham's post-treatment rehabilitation. *Compare* Sealed Supplemental Appendix at 5 (disclosing the treatment) *with* Exh. A. Mr. Cunningham completed an 8-month inpatient drug treatment program in 2012. Sealed Supplemental Appendix at 5. After 2012, Mr. Cunningham received a single conviction—a public disorderly conduct charge in 2013. *Id.* at 7. This conviction likely wouldn't even receive a criminal history point

under the Guidelines. *See* U.S.S.G. § 4A1.2(c)(2) (disorderly conduct conviction only counts if similar to instant offense or sentence was at least 30 days imprisonment or 12 months of probation). The fact that Mr. Cunningham lived a crime-free life for the past six years following his rehabilitation from substance abuse was a "critical part of [his] history and characteristics" that should have been considered. *Pepper v. United States*, 562 U.S. 476, 492 (2011) (defendant's conduct in last five years, during which he was drug-free, went to school, and was a top employee, provided the most up-to-date picture of his history and characteristics and was thus critical a factor in that analysis).

Second, the district court acknowledged Mr. Cunningham's state pretrial release case manager's opinion that he was not a danger to the community, but did not consider her unrebutted testimony on his good behavior during his release. *See* Exh. A at 3-4. Contrary to the district court's assertion that the case manager only ran his criminal record, *id.*; she also kept in contact with him during his release and spoke with his employer. Exh. C at 5-8. And aside from her opinion that Mr. Cunningham was not a danger to the community, she also testified that he was classified as low risk by Mecklenburg County's risk assessment, made all court appearances, received no new charges, and overall presented no issues in following his release conditions. *Id.* Mr. Cunningham's ability to comply with release conditions in the immediately preceding 16 months (for the very behavior underlying his federal charges) bears

25

directly on § 3142's inquiry of whether any release conditions could ameliorate his safety-risk. *Compare United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (a defendant and his history that suggested he would not comply with release conditions in good faith rendered release conditions dependent on his good faith problematic). "Although the district court might not have been required to accept" this evidence, "the court was required to at least consider the evidence, and account for it, when concluding otherwise[,]" but failed to do so. *Wooden*, 693 F.3d at 451.

*Antone* requires reversal here. In *Antone*, the Court concluded that the district court committed reversible error by "inadequately considering substantial evidence" of Mr. Antone's recent, long-term good behavior while incarcerated. 742 F.3d at 165. The district court's discussion of this evidence was "negligible at best" and "failed to discuss the opinions of [correctional employees], the only witnesses who [ ] [had] consistent contact with Antone since his incarceration." *Id.* at 166. Similarly, here the district court failed to discuss Mr. Cunningham's post-treatment rehabilitation or Ms. Moore's unrebutted testimony about Mr. Cunningham's good performance on pretrial release. *See* Exh. A at 3-4. The court's brusque rejection of Mr. Cunningham's case for release did "not sufficiently address the valid and important evidence contained therein." *Antone*, 742 F.3d at 167.

Like in *Antone*, "[t]he district court should have been aware of the uniqueness of [Mr. Cunningham's] factual record" and "comprehensively address[ed] why it

26

believed" Mr. Cunningham's most recent good behavior in the immediately preceding 16-months of pretrial supervised release "was overshadowed by his past acts." *Id.* at 167. The district court reversibly erred when it failed to do so. *Id.*

### 2.     The finding is against the clear weight of evidence.

The government failed to meet its burden of showing by clear and convincing evidence that no combination of release conditions could reasonably assure the safety of any other person and the community. The district court's finding to the contrary is against the clear weight of the evidence considered as a whole, and thus constitutes reversible clear error. *Wooden*, 693 F.3d at 462 (reversing district court's finding that government failed to meet its burden of establishing that Wooden would have serious difficulty refraining from re-offending if released).

To order pretrial detention, the government must first prove "by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person. *United States v. Salerno*, 481 U.S. 739, 751 (1987). As the Supreme Court explained, it is "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community" that a court may, "consistent with the Due Process Clause, . . . disable the arrestee from executing that threat." *Id.* "[T]he 'clear and convincing' standard…is a heavy burden, requiring evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy,

27

as to the truth of the allegations sought to be established or evidence that proves the facts at issue to be highly probable." *United States v. Watson*, 793 F.3d 416, 420 (4th Cir. 2015) (internal quotations and citations).

On appellate review, the record must be assessed with this "exacting [clear-and-convincing] standard in mind." *Antone*, 742 F.3d at 159. With this standard in mind, the clear weight of the evidence firmly establishes that the government failed to meet its burden.

The government argued for detention because Mr. Cunningham posed "a danger to the community" and there was "some risk" he wouldn't comply with release conditions. Exh. C at 3-4. On its face, the government's unspecified "danger" does not include the "identifiable and articulable threat" required for detention. *Salerno*, 481 U.S. at 751.

And the district court's finding that clear and convincing evidence demonstrated that no combination of conditions could reasonably assure the community's safety required "leaps of inference that c[annot] be made under the legal constraints imposed by [the clear-and-convincing] proof burden and the requirements of demonstrable rationality in the fact-finding process." *Miller*, 720 F.2d at 363. Evidence of any risk to the community was tenuous, but there certainly was no unhesitatingly "highly probable" showing that no release conditions could mitigate

any community safety risk when Mr. Cunningham presented unrebutted direct evidence of his longstanding compliance with release conditions.

The government's proof consisted of a proffer on the charged offense, which was simply that he had a gun in his driver seat while he stood outside a parked car with an open container, along with his criminal history. But being a felon in possession of a firearm does not carry a statutory presumption of detention, *i.e.,* it is not a crime that Congress believes will usually involve a safety risk that cannot be ameliorated. So the government's proffer that Mr. Cunningham possessed a firearm as a felon does not move the ball forward very much. As one district court recognized, "the mere fact that the defendant possessed a firearm does not constitute evidence of danger to the community." *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) (although Mr. Taylor was a danger since he was subject to the statutory presumption of detention *and* possessed three firearms, including an AR-15 semi-automatic rifle, *and* was engaged in illegal drug distribution).

Nor does Mr. Cunningham's criminal history support the requisite burden of proof. He did commit an unarmed felony bank robbery 16 years ago and has ten misdemeanor convictions related to substance abuse and petty theft. But, with the exception of a misdemeanor public disorderly conduct offense that occurred seven years ago, all of these crimes occurred prior to his successful completion of an 8-month inpatient treatment program for substance abuse. Sealed Supplemental

29

Appendix at 5. The fact that a pre-treatment Mr. Cunningham racked up one serious charge and a series of misdemeanors between 2004 and 2012 does not render it "highly probable" and "without any hesitancy" that a post-treatment Mr. Cunningham will likely reoffend in 2020 if released. *See Wooden*, 693 F.3d at 451 (district court clearly erred by examining only the date of defendant's past crimes without considering the nature of those offenses, because the latter of fact was critical in determining whether the defendant would have difficulty in refraining from reoffending on release).

Mr. Cunningham presented unrebutted evidence, through testimony from his pretrial case manager, that he can and has abided by release conditions without endangering the public. He was arrested for the firearm possession by state authorities in June of 2019 and placed on pretrial release until October 15, 2020, when the federal government moved for his detention on charges arising from that same June 2019 firearm possession. The state of North Carolina deemed him low risk and gave him the opportunity to show he could be released without incident. Mr. Cunningham did not squander that opportunity. Right up until he was detained in federal court, he was being supervised and during this time was employed, made his court appearances as required, raised his children with his wife, contacted his case manager as directed, and was not charged with any new crimes. As a result, the district court had direct evidence that Mr. Cunningham was not a safety risk in 2020 after being arrested for

being a felon in possession and that he can follow the court's instructions and

conditions.[16]

This Court should be left with the firm and definite conviction that a mistake

was made. In *Antone,* this Court had "no hesitation" in finding that the government

failed to demonstrate by clear and convincing evidence that Antone should be civilly

committed because he would have serious difficulty in refraining from reoffending on

release. 742 F.3d at 159-60. In so concluding, the Court relied on two factors: (1) the

government relied on impulse-related conditions that most offenders suffered from,

which failed to sufficiently differentiate Antone from other offenders, and (2) there

was substantial evidence indicating Antone developed a level of general and social

self-regulation, such as lack of disciplinary infractions and testimony from correctional

officers that he demonstrated self-awareness and control on a regular basis. *Id.* at 169-

70. This Court noted that "at most" the government's evidence met a preponderance

---

[16] To the extent the district court credited the government's speculative concern that Mr. Cunningham may have been engaging in undetected criminal behavior on release, there is not a scintilla of evidence to support this assertion. *See* Exh. A at 3-4 (noting that the probation officer could not testify that Mr. Cunningham did not abuse substances or possess a gun while under her supervision). By relying on the absence of evidence that Mr. Cunningham *did not* reoffend, the government is effectively switching the burden of proof onto the defendant to establish he is not a risk to the community's safety. Of course, the burden of establishing § 3142's parameters for detention is on the government, not the defendant. *Salerno*, 481 U.S. at 751.

standard and that "there [was] not much more that [Antone] could have done to demonstrate" that he did not lack impulse control. *Id.*

Mr. Cunningham's case involves a similar evidentiary deficiency. Yes, he has a criminal record, but he has a single felony conviction for conduct that occurred over 16 years ago. And Mr. Cunningham actually demonstrated that following his June 2019 firearm possession he could and did abide by release conditions without endangering the community for the 16 months immediately preceding the detention hearing. It is hard to imagine a stronger case for pretrial release of a § 922(g) defendant than what was presented to the district court. Just as it was in *Antone*, the district court did not clearly err by placing significant weight on Mr. Cunningham's criminal history; rather, "the deficiency" was "the Government's failure to muster, and the district court's failure to hold the Government to its obligation to muster, sufficient evidence" to show that no combination of release conditions could reasonably assure the community's safety. 742 F.3d at 167-68.

The clear weight of the evidence should leave this Court with the firm and definite conviction that the district court made a mistake when it found that the government met its burden of proof to detain Mr. Cunningham under 18 U.S.C. § 3142(e). *See Antone*, 742 F.3d at 171 (reversing civil commitment order because the government did not establish by clear and convincing that the defendant was a sexually dangerous individual under § 4248). Accordingly, this Court should reverse

32

the detention order and remand for further proceedings in which the district court sets conditions of release.

## Conclusion

For the foregoing reasons, the Court should vacate the detention order and remand for further proceedings.

Date: December 10, 2020

<div style="margin-left: 40%;">

Respectfully submitted,
Anthony Martinez
Federal Public Defender for the
Western District of North Carolina

/s/Melissa S. Baldwin
Melissa S. Baldwin
Assistant Federal Public Defender
129 W. Trade St., Suite 300
Charlotte, NC 28202
(704) 374-0720
Melissa_Baldwin@fd.org
Counsel for Appellant
Timotheus Cunningham

</div>

## <u>CERTIFICATE OF SERVICE</u>

I, Melissa S. Baldwin, Assistant Federal Public Defender for the Federal Public Defender for the Western District of North Carolina, hereby certify that I have filed a copy of the foregoing Memorandum Brief in Support of Appeal on the government's counsel of record, Assistant United States Attorney, Amy E. Ray by CM/ECF.

This 10th day of December, 2020.

<div align="right">

/s/Melissa S. Baldwin
Melissa S. Baldwin
Assistant Federal Public Defender
*Counsel for Appellee*

</div>

APPENDIX

EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-385-MOC-DCK-1

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **TIMOTHEUS CUNNINGHAM,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

_____

**THIS MATTER** is before the Court on defendant's Notice of Appeal of Detention Order (#11). The Government has filed a response in opposition to the Notice of Appeal, and defendant has filed a Reply. Having considered defendant's motion and reviewed the pleadings, the Court enters the following Order affirming the Order of United States Magistrate Judge David Cayer and finding, *de novo*, that detention is appropriate as no condition or combination of conditions will reasonably assure the safety of any other person and the community.

On December 18, 2019, defendant was indicted by the Grand Jury in the Western District of North Carolina for Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Defendant made his initial appearance in U.S. Magistrate Court before Judge David S. Cayer on October 15, 2020. At the hearing, Judge Cayer ordered defendant detained pending a detention hearing.

On October 20, 2020, Judge Cayer presided over defendant's arraignment and a hearing to determine if defendant should be released on bond. Judge Cayer ordered defendant detained after concluding that the Government had proven "by clear and convincing evidence, that no

1

condition or combination of conditions of release will reasonably assure the safety of any other person and the community."  Defendant now appeals the detention order.

The Bail Reform Act of 1984 (hereinafter "the Act") authorizes and sets forth the procedures for a judicial officer to order the release or detention of an arrested person pending trial, sentence, and appeal.  18 U.S.C. § 3145(c).  In order to detain a defendant pending trial, the judicial officer must "find[] that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e).   The factors to be considered in determining whether to release a defendant pending trial are set forth in section 3142(g).  Those factors include:

> (1) nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

United States v. Stewart, 19 Fed. Appx. 46, 48 (4th Cir. 2001).  The Court has reviewed both the Detention Order and the recording of the detention hearing.  As did Judge Cayer, the Court has closely considered all the evidence of record.  The Court has also considered defendant's appeal *de novo*.

The Court notes that defendant has pled not guilty and is presumed innocent of the charge of possession of a firearm by a felon.  With a plea of not guilty and a presumption of innocence, the Court must look at the weight of the evidence in the instant case and examine whether such evidence favors detention under the second Stewart factor.  The Court finds that from a review of the Indictment and the proffer of the Government that the weight of the evidence against defendant is strong and does favor detention.

The history and characteristics of defendant show that: (1) defendant's family relies on

his support where he homeschools his children during the week and works as a forklift driver on the weekend; (2) he has a history of stable employment; (3) he has strong ties to the community; and (4) he has had no violent crimes against persons in the past 16 years. This Court is convinced, however, that defendant's history and characteristics do not outweigh the remaining factors, which indicate that defendant's release would pose a significant risk to the safety of any other person and the community. That is, although defendant has not committed violent crimes in many years, his underlying felony conviction was federal bank robbery by force of violence. Furthermore, the probation office recommended detention based on defendant's: prior arrests and convictions; substance abuse history; violent behavior history; pretrial, probation, parole, or supervised release status and compliance; criminal activity while under supervision; history of weapons use; pattern of similar criminal activity history; and criminal history. (Doc. No. 6 at 8). Moreover, the magistrate judge found the following factors supported detention: the weight of the evidence against defendant is strong, defendant's prior criminal history, defendant's history of alcohol or substance abuse, and prior violations of probation, parole, or supervised release. (Doc. No. 11-2 at 3). As the USPO pretrial report details, defendant's supervised release was revoked in 2009 and he was sent back to prison. Moreover, defendant has two North Carolina state convictions for Driving While Impaired (in 1999 and 2011), which also underscore the danger he poses to the community. In addition, defendant has a long history of misdemeanor convictions for theft, alcohol, and drug-related crimes that aid in justifying his detention in this case. Many of these crimes occurred within ten years of the instant offense.

Here, although defendant's state probation officer testified at the detention hearing that she did not believe defendant posed a danger to the community, the Government noted at the detention hearing that the state probation officer's supervision was limited to running his

criminal record, but the state probation officer had not been to defendant's home, had no knowledge of whether he had any substance abuse issues, and had no knowledge of whether defendant was in possession of a firearm.

After *de novo* review, and having considered the Section 3142(g) factors, this court concludes as did Judge Cayer that defendant's release would pose a serious danger to others. Accordingly, the court will deny defendant's motion and affirm the determination of the magistrate judge in its entirety.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Notice of Appeal of Detention Order (#11) is **GRANTED**, and after such *de novo* review, the Order of Detention in this matter is **AFFIRMED** for the reasons stated above.

Max O. Cogburn Jr.
United States District Judge

Signed: November 21, 2020

4

EXHIBIT B

AO 472 (Rev. 9/16) Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
### for the
### Western District of North Carolina

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| **v.** | ) |
| | )    Case No. 3:19–cr–00385–MOC–DCK |
| Timotheus Cunningham | ) |
| *Defendant* | ) |

## ORDER OF DETENTION PENDING TRIAL

### Part I – Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This Order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II – Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ (1)  the Defendant is charged with with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

   ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

   ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

   ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951–971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501–70508); **or**

   ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

   ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
   **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
   **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; ***and***

☐ (2)  the Defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; ***and***

☐ (3)  the offense described in paragraph (2) above for which the Defendant has been convicted was committed while the Defendant was on release pending trial for a Federal, State, or local offense; ***and***

☐ (4)  a period of not more than 5 years has elapsed since the date of conviction, or the release of the Defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472 (Rev. 9/16) Order of Detention Pending Trial

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required and the safety of the community because there is probable cause to believe that the Defendant committed one or more of the following offenses:

  ☐ (1) an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801–904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951–971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501–70508);

  ☐ (2) an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

  ☐ (3) an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

  ☐ (4) an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581–1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

  ☐ (5) an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

  ☐ the Defendant has not introduced sufficient evidence to rebut the presumption above.

  **OR**

  ☐ the Defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

☐ **D. The Defendant Has Failed to Carry Defendant's Burden Under Rule 32.1(a)(6)**

  ☐ the Defendant was arrested for violating probation or supervised release. Under Rule 32.1 and 18 U.S.C. § 3143(a)(1), the Defendant has not shown by clear and convincing evidence that the Defendant will not flee or pose a danger to any other person or to the community.

### Part III – Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the Defendant must be detained pending trial because the Government has proven:

  ☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

  ☐ By a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required.

AO 472 (Rev. 9/16) Order of Detention Pending Trial

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

- ☑ Weight of evidence against the Defendant is strong
- ☐ Subject to lengthy period of incarceration if convicted
- ☑ Prior criminal history
- ☐ Participation in criminal activity while on probation, parole, or supervision
- ☑ History of violence or use of weapons
- ☑ History of alcohol or substance abuse
- ☐ Lack of stable employment
- ☐ Lack of stable residence
- ☐ Lack of financially responsible sureties
- ☐ Lack of significant community or family ties to this District
- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States
- ☐ Subject to removal or deportation after serving any period of incarceration
- ☐ Prior failure to appear in court as ordered
- ☐ Prior attempt(s) to evade law enforcement
- ☐ Use of alias(es) or false documents
- ☐ Background information unknown or unverified
- ☑ Prior violations of probation, parole, or supervised release

ADDITIONAL REASONS

☐ The Defendant consents to detention.

## Part IV – Directions Regarding Detention

The Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

| October 20, 2020 | |
| --- | --- |
| Date | |

David S. Cayer
United States Magistrate Judge

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA ) DOCKET NO. 3:19-CR-385
)
vs. )
)
TIMOTHEUS CUNNINGHAM, )
)
Defendant. )
_____)

TRANSCRIPT OF ARRAIGNMENT AND DETENTION HEARING
BEFORE THE HONORABLE DAVID S. CAYER
UNITED STATES MAGISTRATE JUDGE
OCTOBER 20, 2020

APPEARANCES:

On Behalf of the Government:

      DAVID W. KELLY, ESQ.
      United States Attorney's Office
      227 West Trade Street, Suite 1700
      Charlotte, North Carolina

On Behalf of the Defendant:

      MYRA CAUSE, ESQ.
      Federal Public Defender's Office
      129 West Trade Street, Suite 300
      Charlotte, North Carolina

Digitally recorded proceedings transcribed by:

                    Cheryl A. Nuccio, RMR-CRR
                     Official Court Reporter
                   United States District Court
                    Charlotte, North Carolina

<u>P R O C E E D I N G S</u>

1
2          (Transcript of proceedings digitally recorded on
3  October 20, 2020.)
4          THE COURT:  United States versus Timotheus
5  Cunningham.
6          Ms. Cause, are you ready to proceed with a
7  detention?
8          MS. CAUSE:  We are, Your Honor.  However, before we
9  proceed, we would ask if Your Honor would allow Mr. Cunningham
10  to wear hearing devices --
11          THE COURT:  Yes.
12          MS. CAUSE:  -- as he is hard of hearing.
13          THE COURT:  Yes.
14          MS. CAUSE:  Thank you.
15          THE COURT:  Are you able to hear, sir?
16          THE DEFENDANT:  Yes, sir.
17          THE COURT:  All right.  Mr. Kelly, I'll hear from
18  the government.
19          MR. KELLY:  Thank you, Your Honor.
20          Your Honor, the government is seeking the
21  defendant's detention in this matter.  The facts are that on
22  June the 21st of 2019, Charlotte-Mecklenburg police approached
23  the defendant after observing him holding an open liquor
24  bottle outside of his parked vehicle here in Charlotte.  He
25  initially ignored the officer when he inquired about the

1    bottle.  And then as the officer approached further, he put

2    the open container inside his vehicle.  It is there that the

3    officer observed a Smith and Wesson .38 caliber revolver

4    sitting inside on the vehicle driver seat.  He was detained

5    and they determined the vehicle was registered to him.

6         Following discovering this revolver, they realized

7    he was a convicted felon.  He was arrested.  He was taken to

8    the law enforcement center, read his *Miranda* rights, and

9    acknowledged possession of the firearm to protect his family.

10        Your Honor, the defendant's prior history includes

11   driving while impaired; bank robbery, a federal conviction --

12   in that matter he was revoked from supervised release;

13   possession of drug paraphernalia; another driving while

14   impaired conviction with a probation revocation on that charge

15   as well in state court; larceny; larceny; possession of drug

16   paraphernalia; shoplifting; disorderly conduct; and consuming

17   alcohol on city/county property.

18        Your Honor, it appears to the government that

19   defendant might have some kind of drinking problem.  He's

20   obviously got some kind of problem where he drives after he

21   drinks based on his criminal history.  And now he's drinking

22   and has a firearm.

23        For these reasons, Your Honor, the government would

24   ask that you order the defendant detained as he does pose a

25   danger to the community and there is some risk that he will

4

ANDREA MOORE – DIRECT

1  not follow the Court's orders if released based on his prior

2  conduct and probation violations.

3          THE COURT:  Ms. Cause.

4          MS. CAUSE:  Thank you, Your Honor.

5          Defense calls Ms.–– Probation –– Pretrial Service

6  Officer Andrea Moore.

7          ANDREA MOORE, DEFENSE WITNESS, SWORN,

8          MS. CAUSE:  May I proceed, Your Honor?

9          THE COURT:  Yes, ma'am.

10          MS. CAUSE:  Thank you.

11                  DIRECT EXAMINATION

12  BY MS. CAUSE:

13  Q.  Good morning.

14  A.  Good morning.

15  Q.  Please state your name for the record.

16  A.  Andrea Moore.

17  Q.  How do you spell your name?

18  A.  A-n-d-r-e-a, last name M-o-o-r-e.

19  Q.  Are you employed, Ms. Moore?

20  A.  Yes.

21  Q.  Where do you work?

22  A.  I work for Mecklenburg County Pretrial Services.

23  Q.  What is your position?

24  A.  I'm a case manager for the administrative level of

25  clients.

5

ANDREA MOORE – DIRECT

1    Q.    How long have you been working in that position?

2    A.    Approximately 15 months.

3    Q.    What is your training and experience in being a case

4    manager?

5    A.    I have had about 15 years of experience as a case manager

6    dealing both in the field of criminal justice and social work.

7    And I've also received on-the-job training since I've been

8    employed with Mecklenburg County.

9    Q.    Do you supervise individuals as part of your job?

10   A.    Yes, ma'am.

11   Q.    Is Timotheus Cunningham one of those individuals?

12   A.    Yes, ma'am.

13   Q.    Do you see him in court today?

14   A.    Yes, ma'am.

15   Q.    Would you please point to his general direction.

16          MS. CAUSE:  Your Honor, would the record please

17   reflect that Ms. Moore has identified Mr. Cunningham.

18          THE COURT:  The record will so reflect.

19          MS. CAUSE:  Thank you.

20   Q.    How do you know Mr. Cunningham?

21   A.    He is one of my clients under supervision.

22   Q.    As part of being one of your clients, does he have to

23   follow certain rules for supervision?

24   A.    Yes, ma'am.

25   Q.    What are those rules?

ANDREA MOORE – DIRECT

1   A.   Because he's on the lowest level of supervision, the main
2   thing I require that he do is to not get any additional
3   charges and ensure that he attends court every time he's
4   scheduled.  He also needs to make sure he keeps his contact
5   information up to date with me so that I'm able to contact him
6   as needed with anything related to his case or if there's any
7   concerns that I may have that I need to address with him.
8   Q.   Have you gone over these rules with Mr. Cunningham?
9   A.   Yes, ma'am.
10  Q.   You noted that he's on the lowest level of supervision.
11  Are there other levels of supervision?
12  A.   Yes, ma'am.  There are three total.
13  Q.   Would you please describe those for the Court.
14  A.   Yes.  The lowest level is what we refer to as the
15  administrative level, and that level is for clients who we
16  consider not to pose a high risk to the community and that's
17  based on a risk assessment that we do at time of arrest.
18       Then the second level is what we call standard which they
19  have additional requirements as far as how often they need to
20  come into our office and how closely we supervise them.
21       And then the third is our intensive level supervision
22  which requires more interaction with the case manager on a
23  regular basis.
24  Q.   Would you please describe -- would you please describe
25  Mr. Cunningham's behavior and compliance since you've been

ANDREA MOORE – DIRECT

1  supervising him.

2  A.   I do not have any compliance concerns with

3  Mr. Cunningham.  He originally was released to pretrial back

4  in June of 2019.  He was instructed to show up for

5  orientation, which is typically the next day.  He did so as

6  required.  From that time he's been able to maintain contact

7  with me or someone from my office for his monthly phone

8  contacts.  At some point around October of last year we

9  changed our requirement so we no longer had to –– he no longer

10  had to check in monthly, but he still continues to maintain

11  that phone contact with me.

12      Since COVID has happened, he's still maintained those

13  appointments.  I mean, he communicates with me with any

14  changes in his information.  He did –– he did start working

15  and he's been working with Ryder Trucking Company.  And I

16  spoke to his employer.  There are no concerns from his

17  employer.

18      So as far as information that has been relayed to me, he

19  has been compliant with pretrial conditions.

20  Q.   Do you believe that Mr. Cunningham is a flight risk?

21  A.   Based on my interactions with him over the past year, I

22  do not.

23  Q.   Do you believe that Mr. Cunningham is a danger to the

24  community?

25  A.   He has not had any new charges since being released to

ANDREA MOORE - CROSS

1  pretrial so based on the information available to me, I do not

2  see any concern.

3  Q.   Were you aware of his criminal history at the time he

4  became one of your supervisees?

5  A.   Yes, ma'am.

6  Q.   Are you aware on what charge he was brought before the

7  state?

8  A.   (Inaudible.)

9  Q.   Do you receive any personal or professional benefit if

10 Mr. Cunningham is released on conditions?

11 A.   No, ma'am.

12 Q.   Do you receive any personal or professional benefit if

13 Mr. Cunningham is incarcerated?

14 A.   No, ma'am.

15 Q.   Do you receive any personal or professional detriment

16 whether he is released or incarcerated?

17 A.   No, ma'am.

18 Q.   Do you have any personal or professional interest

19 whatsoever in how this case resolves itself?

20 A.   No, ma'am.

21 Q.   Do you have the ability to search for federal warrants?

22 A.   I do not.

23           MS. CAUSE:  No further questions, Your Honor.

24           THE COURT:  Mr. Kelly.

25                       CROSS EXAMINATION

ANDREA MOORE – REDIRECT

1 BY MR. KELLY:

2 Q.   Ma'am, just to be clear, your supervision of the

3 defendant includes merely making sure he has not been charged

4 with a new crime; is that right?

5 A.   Correct.

6 Q.   And he's supposed to give you his contact information,

7 which he has done.

8 A.   Yes.

9 Q.   You've never been to his house.

10 A.   No, sir.

11 Q.   You wouldn't be able to tell me if he has been in

12 possession of firearms.

13 A.   No, sir.

14 Q.   Or if he's been drinking and driving.

15 A.   No, sir.

16        MR. KELLY:   Thank you.   Nothing further, Your Honor.

17        MS. CAUSE:   May I?

18        THE COURT:   I'm sorry, go ahead.

19        MS. CAUSE:   Thank you, Your Honor.   Briefly.

20                  REDIRECT EXAMINATION

21 BY MS. CAUSE:

22 Q.   Why is Mr. Cunningham on the lowest level of supervision?

23 A.   That was based on the risk assessment that we did.   We

24 take into account previous history, not just the criminal

25 history but failure to appear records, and based on that

ANDREA MOORE - REDIRECT

1  information we -- we -- sorry, we use an assessment and based

2  on that assessment it gives a recommendation as to what level

3  of supervision, including whether or not they should be

4  released on written promise to appear.

5  Q.    And if you believe that he was violating or having any

6  troubles at all, do you have the ability of increasing his

7  level of supervision?

8  A.    Yes, I can increase his level to either standard or

9  intensive as well as submit notice to the Court to request

10 revocation of pretrial.

11 Q.    If Mr. Cunningham received any state warrants or had

12 state interactions with law enforcement, would you have a way

13 of verifying that?

14 A.    Yes, ma'am.

15        MS. CAUSE:  No further questions -- I'm sorry.

16        THE WITNESS:  I conduct monthly background checks on

17 Mr. Cunningham to look for warrants and new criminal activity.

18        MS. CAUSE:  No further questions, Your Honor.

19        THE COURT:  Mr. Kelly.

20        MR. KELLY:  No, Your Honor.

21        THE COURT:  Ms. Moore, did he have a secured bond in

22 state court?

23        THE WITNESS:  Yes.

24        THE COURT:  How much?

25        THE WITNESS:  I don't recall offhand how much, Your

1  Honor.  I do apologize.

2  THE COURT:  All right.  You may step down.

3  (Witness stepped down.)

4  THE COURT:  Ms. Cause.

5  MS. CAUSE:  Thank you, Your Honor.

6  We are respectfully asking for Your Honor to set

7  conditions of release for Mr. Cunningham.  We are very aware

8  that every case that comes before Your Honor is different and

9  specific based off of the facts that are alleged by the

10  government as well as the personal conditions that this person

11  finds himself in.

12  We would note that Mr. Cunningham is not a flight

13  risk.  He is from Charlotte, North Carolina.  All his family

14  is in the Charlotte area -- sorry, in or about Charlotte or in

15  the surrounding areas.  He does have the support of his

16  brother who came into court today.  If you would raise your

17  hand.  And he also has the support of his wife who also came

18  to court today to show support to Mr. Cunningham.  He

19  certainly is not out here without people who are holding him

20  responsible for his behaviors.  There are people who are out

21  here who personally care about him.

22  He is married.  He has three children, a 3-year-old,

23  a 9-year-old, and an 11-year-old.  He resides with his family,

24  his wife and his three children, at XXXX XXXXXXXX XXXXXX,

25  Apartment XXXXX, as in George, and that is here in Charlotte,

1  North Carolina.  He has resided at that residence since
2  February or March of this year.  Before then he resided at
3  XXXX XXXXX XXXXXX.  That's also in Charlotte, North Carolina.
4  He resided there for three years.  I say that —— those details
5  for Your Honor so that you can be aware that this person has
6  had stable residences while in Charlotte, and he continues to.
7         He has worked full-time in the past and then
8  recently, as was noted by Officer Moore, reduced his hours to
9  part-time.  She was able to confirm with his employer that
10 he's still employed there.  He works on the weekends.  He
11 works as a forklift driver for Ryder.  The only reason why he
12 moved to part-time employment was because of the pandemic.
13 Essentially, like many families with young kids, his kids were
14 forced to do schooling from home.  So essentially, because his
15 wife is the primary breadwinner, it made financial sense
16 within their family for him to stay home and be the care ——
17 primary caregiver as far as homeschooling is concerned and as
18 far as just baby-sitting is concerned.  So that's the only
19 reason why he went part-time and yet he still does work on the
20 weekend to help support his family.
21        In addition to that, Your Honor, he has been in
22 contact with the temp agency Randstad for the past three
23 years.  I'm only mentioning the most recent employer because
24 that's where he is currently employed.
25        Your Honor, as the Court's (inaudible) in the Bail

1    Reform Act, the law writers of this country have made it so
2    that it really does require more than the pointing finger of a
3    prosecutor or their law enforcement officers to completely
4    remove freedom from a person who comes before you.  And in
5    this situation, Your Honor, as the Court is aware, there is no
6    presumption for detention.  In other words, lawmakers would
7    direct the Court to release Mr. Cunningham on conditions of
8    release or on his own recognizance as Your Honor sees
9    appropriate based off of his specific case and his specific
10   characteristics coming before Your Honor.  Mr. Cunningham
11   certainly does not represent every single person who would
12   come before Your Honor with these charges and we don't pretend
13   like he does.

14           So we would ask for you to look only at his specific
15   situation.  And in his specific situation we have a pretrial
16   service officer who has been supervising him since June of
17   last year, so well over a year at this point.  She's had no
18   reason to have concern for him.  She testified today before
19   Your Honor, provided evidence through testimony that even as
20   of October of last year, he didn't need to keep in as close
21   contact with her, but he's chosen to on his own account.  He
22   calls her at least every single month even though he doesn't
23   have to.

24           I won't repeat the testimony for Your Honor as I
25   believe the record is clear and Your Honor was able to hear

1  it, but essentially he's on a low level of supervision with
2  the state, or has been, based off of their assessment of him.
3  And if for any reason they thought he was a higher risk, he
4  would be more constrained within his supervision.  But due to
5  his personal and very specific circumstances, he has not been.
6  And so for the past over a year he's had no problems on
7  supervision.  And this is coming from a witness who has
8  nothing to gain from this person being released, nothing to
9  lose from him being released, nothing to gain from him being
10 incarcerated or released.  She has literally no dog in this
11 fight whether he goes to trial, whether he pleads.  She's
12 neutral.  She simply provided honest testimony to Your Honor
13 based off of her experience in supervising him for well over a
14 year at this time.

15         It is our position that there is every reason to
16 believe that Mr. Cunningham would continue this exemplary
17 behavior while on federal pretrial release, that he would
18 continue having probably too much contact with his pretrial
19 officer, that he will continue taking care of his three
20 children at home, that he would continue to work on the
21 weekends to help provide and supplement his wife's income, and
22 that he would continue coming to any and every court date set
23 by Your Honor or the district court regarding this case.

24         I do think it's worth noting that Ms. Moore was
25 aware of his criminal history and yet he's still a low level

1  of supervision.

2        In addition to that, Your Honor, if Your Honor had

3  any concern about the home where he resides, we would ask for

4  Your Honor to direct pretrial services to do a thorough search

5  of his home, review his home to ensure that it is proper for

6  supervision in this matter federally and to allow him the

7  opportunity to show Your Honor that he can be supervised

8  without being a flight risk or danger to the community because

9  he is, in fact, neither of those.

10        I know that the government mentioned some of his

11  criminal history.  I simply would highlight that the last

12  criminal case that he had, last misdemeanor was seven years

13  ago.  Significant time has passed.  Since then he does have,

14  it appears, two dismissed cases that were traffic tickets, an

15  expired registration around speeding issues, and those were --

16  it looks as though they were voluntarily dismissed or

17  dismissed.  But within the past seven years this gentleman has

18  had no other criminal activity within the state or within the

19  federal system.

20        Ms. Moore has monthly done background checks on

21  Mr. Cunningham to ensure he hasn't had any other problems

22  within the state system.  She doesn't have access to the

23  federal warrants, but he has been trying to comply with her

24  and make sure he has been doing what he's supposed to do by

25  maintaining communication.

1      For these reasons, Your Honor, we are respectfully
2 asking for you to set really any condition of release.  If you
3 think that he has an issue with alcohol, we ask for you to
4 allow him to have substance abuse treatment.  I understand he
5 does go to AA and that he does also go to church and receives
6 support there.
7      If Your Honor believes he should be on an ankle
8 monitor, we respectfully ask for you to place him on that, a
9 secured bond, whatever Your Honor believes is appropriate.
10 However, I think that given this is not a presumptive case,
11 defense has most certainly shown through testimony evidence
12 that this is a gentleman who can and should be released on
13 conditions of bond.
14      Thank you.
15      THE COURT:  Anything further from the government?
16      MR. KELLY:  Your Honor, just, if I may say,
17 regarding the testimony of Ms. Moore.  I mean, essentially
18 she's telling this Court that she's not seeing in the criminal
19 records that he's been charged with something and that's all
20 she's able to do.  She's not able to supervise him in any
21 other way.  She's never seen him out in the community.  And
22 that's not her fault.  That's her job.  But her job is to run
23 a criminal record check and see if he's been charged with
24 something and to make sure she has his contact information.
25 That's all she's done.

1          Probation in this case, federal probation, of

2    course, prepared an eight-page report looking at all the

3    defendant's history and all the factors and listed six factors

4    that they believe pose -- shows that he poses a risk of

5    nonappearance and eight factors they believe shows that he

6    poses a risk of danger to the community.  And for those

7    reasons we'd ask that he be detained.

8          MS. CAUSE:  Your Honor, I would simply note that

9    Ms. Moore did testify that her organization reviewed those

10    same factors when determining that he should be on low level

11    which is why her supervision was what it was.

12          THE COURT:  The Court will order him detained.

13          Is he prepared to be arraigned?

14          MS. CAUSE:  He is, Your Honor.  At this time we'd

15    plead not guilty, waive formal reading of the charging

16    document, and request a jury trial.

17          THE COURT:  Marshal, we'll take a ten-minute recess.

18          (End of proceedings.)

19                          *****

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT

2   WESTERN DISTRICT OF NORTH CAROLINA

3   CERTIFICATE OF REPORTER

4

5

6          I, Cheryl A. Nuccio, Federal Official Realtime Court

7   Reporter, in and for the United States District Court for the

8   Western District of North Carolina, do hereby certify that

9   pursuant to Section 753, Title 28, United States Code, that

10  the foregoing is a true and correct transcript of the

11  digitally-recorded proceedings, transcribed to the best of my

12  ability, held in the above-entitled matter and that the

13  transcript page format is in conformance with the regulations

14  of the Judicial Conference of the United States.

15

16          Dated this 26th day of October 2020.

17

18                          s/Cheryl A. Nuccio

19                          _____
                            Cheryl A. Nuccio, RMR-CRR
20                          Official Court Reporter

21

22

23

24

25