IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

No. 20-4588

————————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

TIMOTHEUS CUNNINGHAM,

*Defendant – Appellant.*

————————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Max O. Cogburn Jr., District Judge*

————————————

MEMORANDUM BRIEF OF THE UNITED STATES

————————————

R. Andrew Murray                  Anthony J. Enright
United States Attorney            Assistant United States Attorney
                                  United States Attorney's Office
                                  227 West Trade Street
                                  Carillon Building, Suite 1650
                                  Charlotte, North Carolina 28202
                                  (704) 344-6629

*Attorneys for the United States of America*

# JURISDICTIONAL STATEMENT

Timotheus Cunningham, who is charged in the Western District of North Carolina with possession of a firearm by a convicted felon, appeals the district court's order requiring Cunningham's detention pending trial.   The statute governing original jurisdiction in federal criminal matters, 18 U.S.C. § 3231, conferred jurisdiction on the district court (Hon. Max O. Cogburn Jr., J.).   The district court's order of detention, filed on November 23, 2020, *Exh. A*,[1] "qualifies as a final order that may be appealed directly to this court." *United States v. Harrison*, 396 F.3d 1280, 1281 (2d Cir. 2005).   Cunningham filed a notice of appeal on November 24, 2020, *Notice of Appeal*, *United States v. Cunningham*, No. 3:19-cr-385 (W.D.N.C. Nov. 24, 2020) (Doc. No. 16), which is timely under Federal Rule of Appellate Procedure 4(b)(1)(A)(i). *See* 3B Charles Alan Wright et al., *Federal Practice & Procedure* § 775

---

[1]   Citations to exhibits identified by letters refer to the exhibits attached to Cunningham's December 10 Memorandum Brief filed in this Court.

& n.20 (4th ed.).    This Court has jurisdiction of this appeal under 28

U.S.C. § 1291.    *See* 18 U.S.C. § 3145(c).

## ISSUE PRESENTED

Cunningham stands credibly accused of illegally possessing a

firearm for protection, in a car with an open container of liquor.    He

has previously been convicted of federal bank robbery and ten different

state offenses, including larceny and driving while impaired.    And he

has previously violated — more than half-a-dozen ways — conditions of

pretrial release, federal supervised release, and state probation.    Did

the district court clearly err by ordering Cunningham's pretrial

detention?

## STATEMENT OF THE CASE

**A.    Cunningham is charged with illegally possessing a firearm after a history of federal bank robbery, ten different state crimes, and more than half-a-dozen violations of conditions of pretrial release, supervised release, and probation**.

Cunningham received eleven different convictions in state and

federal court before he was charged with the federal firearm offense

that led to the detention he challenges in this appeal, according to the

2

pretral-services report prepared by the district court's probation office.[2]

S.A. 5–7.   That criminal history began in 1998, when Cunningham

received a conviction in North Carolina state court for driving while

impaired.   S.A. 5.

   In 2004, a grand jury in the Western District of North Carolina

indicted Cunningham for the federal offense of bank robbery, 18 U.S.C.

§ 2113(a), an offense that he acknowledges "involves . . . the use of force,

violence or intimidation."   *Br. of Appellant* 6 n.7; *Indictment*, *United*

*States v. Cunningham*, 3:04-CR-299 (W.D.N.C. Nov. 11, 2004) (Doc. No.

3); S.A. 5.   He was released pending trial subject to a $50,000 bond,

pretral-services supervision, home detention, and electronic

monitoring.   *Apr. 2005 Violation Report*, *United States v. Cunningham*,

3:04CR299 (W.D.N.C. Apr. 15, 2005) (Doc. No. 14).

---

[2]   Unless otherwise stated, this brief's description of Cunningham's
criminal history and offense conduct is based on information in the
pretral services report filed by Cunningham as a Supplemental
Appendix and the proffer provided to the district court by the United
States.   Exhibit C, at 2–4.   Cunningham does not appear to dispute
this information for purposes of this appeal.   *See, e.g.*, *Br. of Appellant*
6 (acknowledging that his criminal history includes 11 convictions); *id.*
at 22 (relying on the United States' proffer).

The district court ordered Cunningham detained pending his bank-robbery trial after finding that he twice violated the conditions of his pretrial release. *May 2005 Detention Order, United States v. Cunningham*, 3:04CR299 (W.D.N.C. May 11, 2005). His first violation occurred, according to the probation office, when he left his home for more than 24 hours less than a month after he was released and placed on home detention and electronic monitoring. *Feb. 2005 Violation Report, United States v. Cunningham,* 3:04CR299 (W.D.N.C. Mar. 4, 2005) (Doc. No. 10). The court continued Cunningham's release after that violation. *Apr. 2005 Violation Report* 1. The probation office identified the second violation after Cunningham was arrested less than a month later and charged in state court with misdemeanor larceny. *Id.*

Cunningham pleaded guilty to his federal bank-robbery charge and received a sentence of 34 months' imprisonment and 3 years' supervised release. *Judgment, United States v. Cunningham,* 3:04CR299, at 1, 3 (W.D.N.C. Feb. 19, 2006) (Doc. No. 10). The court imposed 25 conditions of supervised release, including conditions

4

requiring him to submit his home and other locations to warrantless searches and requiring him to participate in a drug-treatment program. *Id.* at 3.

The district court revoked Cunningham's supervised release after he admitted violating his release conditions six different ways. *Revocation Judgment, United States v. Cunningham,* 3:04CR299, at 1 (W.D.N.C. June 16, 2009) (Doc. No. 29). He failed to comply with basic requirements of supervision, such as reporting to his probation officer as instructed, reporting a change of residence, and reporting a change in employment. *Id.* He violated a condition requiring him to comply with drug testing and treatment requirements. *Id.* He transgressed limits imposed on his drug and alcohol use. *Id.* And he violated a condition prohibiting him from committing any new offenses when he illegally possessed drug paraphernalia, an offense for which he received a state conviction while on federal supervised release. *Id.*; S.A. 5. The district court sentenced Cunningham to 6 months' imprisonment after revoking his supervised release. *Revocation Judgment* 2.

5

In the years that followed, Cunningham received convictions for eight additional offenses — including multiple larceny, shoplifting, and drug or alcohol offenses — in different North Carolina state courts. S.A. 6–8. In January of 2011, Cunningham pleaded guilty to consuming alcohol on government property. S.A. 6. In March, he pleaded guilty to misdemeanor larceny in Mecklenburg County. S.A. 6. In May, he pleaded guilty to driving while impaired. S.A. 6. In August, he pleaded guilty to misdemeanor larceny in Union County. S.A. 6. In September, he pleaded guilty to an open-container alcohol violation. S.A. 7. In October of 2012, Cunningham pleaded guilty to possession of drug paraphernalia. S.A. 7. And in June of 2013, Cunningham pleaded guilty to a charge of public disorderly conduct. S.A. 7.

Cunningham was also charged multiple times in state court, according to the pretrial-services report, with violations of conditions of probation. S.A. 6–7. In October of 2011, Cunningham received 60 days' imprisonment for a probation-violation charge. S.A. 6. And in

July of 2012 he was charged with another probation violation that was resolved in November of 2013.   S.A. 7.

Cunningham's most recent indictment alleges that Cunningham committed the federal gun offense that gave rise to the detention he challenges in this appeal on June 21, 2019.   *Indictment, United States v. Cunningham*, No. 3:19CR385, at 1 (W.D.N.C. Dec. 18, 2019) (Doc. No. 1).   A police officer asked Cunningham about an open bottle of liquor he was holding outside of his parked car, according to the United States' proffer to the district court.   *Exh. C*, at 2–3.   Cunningham initially ignored the officer, and then placed the open container in his car when he approached.   *Id.* at 3.   The officer saw a .38 caliber revolver sitting on the driver's seat.   *Id.*

Officers arrested Cunningham on state felon-in-possession charges and informed him of his rights.   *Id.*   Cunningham acknowledged possessing the firearm.   *Id.* at 3.   He indicated that he had the gun to protect his family.   *Id.*   He was released on state pretrial supervision.   *Id.* at 7.

A federal grand jury indicted Cunningham in December of 2019. *Indictment.* He was arrested on the federal charge 10 months later. *United States v. Cunningham*, No. 3:19CR385 (W.D.N.C. Oct. 16, 2019) (Doc. No. 7). At his initial appearance, the district court appointed counsel to represent Cunningham, and the United States moved for his pretrial detention. *United States v. Cunningham*, No. 3:19CR385 (W.D.N.C. Oct. 15, 2020) (entries between Docs. No. 3 & 4).

**B. The district court orders Cunningham's detention after finding that no condition or combination of conditions will reasonably assure the safety of the community.**

The district court's probation office prepared a pretrial-services report describing Cunningham's personal history, his employment history, his history of substance abuse, and his criminal history. S.A. 2–8. It noted that Cunningham had completed an 8-month inpatient drug treatment program in 2012 as a condition of his probation. S.A. 5. The report stated that Cunningham had reported regular use of cocaine, alcohol, and cannabinoids since completing that program. S.A. 4. The October 2020 report stated that Cunningham reported his last uses of alcohol and cannabinoids as a year prior and eleven months

8

prior, respectively, S.A. 4 — times when he was on pretrial release for his state felon-in-possession charge, *Exh. C*, at 7.   And Cunningham reported last using cocaine "5 years ago," S.A. 4, in 2015.

The probation officer who prepared the report recommended that Cunningham be detained pending his trial.   S.A. 8.   The report identified a number of factors in Cunningham's history as indicative of a risk that Cunningham would fail to appear as required or would present a danger, including his criminal history, the nature of his offense, and his previous commission of criminal activity while under supervision.   S.A. 8.   It concluded that "no condition or combination of conditions" of pretrial release would "reasonably assure the appearance of the defendant as required and the safety of the community."   S.A. 8.

The district court held a hearing shortly after Cunningham's federal arrest to determine whether Cunningham should be detained or released.   *Exh. A*, at 1.   The United States proffered without objection a description of Cunningham's offense and his statements acknowledging possession of the gun.   *Exh. C* at 2–3.   It described his criminal history and placed emphasis on Cunningham's multiple

9

convictions for driving while impaired and several other convictions related to alcohol. *Id.* at 3. It explained that Cunningham appeared to "have some kind of drinking problem." *Id.* And his offense conduct involved his drinking while in possession of a firearm. *Id.* at 3. In the light of this offense conduct and criminal history, the United States asked that the Court "order the defendant detained" because he "pose[s] a danger to the community and there is some risk that he will not follow the Court's orders if released based on his prior conduct and probation violation." *Id.* at 4.

Cunningham called as a witness Andrea Moore, a case manager with the Mecklenburg County Pretrial Services office who had supervised Cunningham for a portion of the time he was on pretrial release for his state felon-in-possession charge. *Id.* at 4–5. She testified that Cunningham had been subject to the "lowest level of supervision," which is the "administrative level." *Id.* at 6. "[T]hat level," she explained "is for clients who we consider not to pose a high risk to the community, and that's based on a risk assessment that we do at time of arrest." *Id.* at 6. Moore testified at the October 20, 2020,

hearing that she had been in her position for approximately 15 months, *Exh. C* at 5, indicating that her tenure began approximately a month after Cunningham's June 2019 state arrest. *Exh. C.* at 1, 7. She did not say whether she had personal knowledge of any risk assessment conducted the time of Cunningham's arrest. But she explained, "We take into account previous history, not just the criminal history but failure to appear records, . . . we use an assessment and based on that assessment it gives a recommendation as to what level of supervision, including whether or not they should be released on written promise to appear." *Id.* at 9–10.

Moore testified that Cunningham's obligations while on state supervision were to "not get any additional charges," "attend[] court every time he's scheduled," and "keep his contact information up to date." *Id.* at 6. She testified that she had no "compliance concerns with Mr. Cunningham." *Id.* at 7. Cunningham had appeared for his orientation and had maintained monthly phone contacts with her or someone else from her office. *Id.* at 7. She explained that she had spoken to Cunningham's employer, and "there are no concerns from his

employer." *Id.* at 7.    Asked if she believed Cunningham was a flight risk, Cunningham replied, "Based on my interactions with him over the past year, I do not." *Id.* at 7.    And when asked if she believed Cunningham is a danger to the community, Moore replied, "He has not had any new charges since being released to pretrial so based on the information available to me, I do not see any concern." *Id.* at 8.

Moore agreed that her supervision of Cunningham "includes merely making sure he has not been charged with a new crime." *Id.* at 9.    She explained that she conducted monthly background checks on Cunningham to look for warrants and new criminal activity. *Id.* at 10. But she did not have the ability to search for federal warrants. *Id.* at 8.    She had never been to Cunningham's house. *Id.* at 9.    And she agreed that she would not be able to say if Cunningham had been in possession of firearms. *Id.* at 9.

Cunningham asked the Court "to set conditions of release for Mr. Cunningham." *Id.* at 11.    He identified family members in the courtroom and described his long history in Charlotte in support of his argument that he is not a flight risk. *Id.* at 11.    He explained that he

12

had worked full time before reducing his hours during the COVID-19
pandemic to help take care of his children who were "forced to do
schooling from home." *Id.* at 12.   He explained that he would not
repeat Moore's testimony, acknowledging that the "record is clear and
Your Honor was able to hear it." *Id.* at 13–14.   He argued that "there
is every reason to believe that Mr. Cunningham would continue" his
"exemplary behavior while on federal pretrial release." *Id.* at 14.   And
he stated that "[s]ignificant time ha[d] passed" since his "last
misdemeanor." *Id.* at 15.

Cunningham told the Court he was asking it to "set really any
condition of release." *Id.* at 16.   If the Court "had any concern about
the home where" Cunningham "resides," he explained that he would ask
that the court "direct pretrial services to do a thorough search of his
home." *Id.* at 15.   If the court thought he "ha[d] an issue with alcohol,"
he asked for the Court to "allow him to have substance abuse
treatment," noting that he already attended "AA" and received support
from the church he attended. *Id.* at 16.   Cunningham further asked
the Court to place him on an "ankle monitor" if the Court believed he

13

"should be on" one.   *Id.* at 16.   He also suggested that a "secured bond" would be appropriate if the court so believed.   *Id.*

The magistrate judge presiding over Cunningham's detention hearing ordered Cunningham detained.   *Id.* at 17.   In writing, the court found by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any person and the community."   *Exh. B* at 2.   The court found that the weight of the evidence against Cunningham was strong.   *Id.* at 3. And it found that his criminal history, history of violence, history of alcohol and substance abuse, and prior violations of probation and supervised release supported his detention.   *Id.* at 8.   The court did not find that Cunningham posed a risk of flight that could not be mitigated by appropriate conditions.   *Id.*

Two weeks after the magistrate judge issued its detention order, Cunningham filed with the district court a "Notice of Appeal and Motion to Revoke Detention Order," *United States v. Cunningham*, No. 3:19CR385 (W.D.N.C. Nov. 3, 2020) (Doc. No. 11).   Cunningham argued that the "Court *must* presume Cunningham is innocent of any of the

14

government's accusations" and criticized the district court's evaluation of "the weight of the evidence." *Id.* at 2, 5–6, 8. Although he did not object to the United States' proffer or contend before the magistrate judge that any part of it was inaccurate, in his filing, Cunningham criticized the magistrate judge for "explicitly rel[ying] on the government's unfounded, non-evidentiary proffer summary against Mr. Cunningham and his old criminal history." *Id.* at 8. Cunningham also argued that the magistrate judge had "ignored" the "other facts in the case" which "mitigated strongly in favor of release. *Id.* at 6. He then described the history and characteristics that he proffered during the detention hearing, including his history of employment and providing care for his family. *Id.* at 6. He further argued that Moore's testimony offered a "powerful illustration" of "Cunningham's ability to succeed on release," noting that it reflected his actual behavior when granted release on the same charge. *Id.* at 6–7.

The United States responded. *Response, United States v. Cunningham*, No. 3:19CR385 (W.D.N.C. Nov. 5, 2020). Cunningham filed a reply, reiterating "The Magistrate Judge appears to have

15

entirely disregarded Ms. Moore's testimonial evidence and explicitly relied on the government's unfounded, non-evidentiary proffer summary against Mr. Cunningham and his old criminal history." *Reply*, *United States v. Cunningham*, No. 3:19CR385 (W.D.N.C. Nov. 5, 2020) (Doc. No. 14).

The district court conducted a *de novo* review and affirmed the order of detention in a written order. *Exh. A*, at 1. The Court explained that the Bail Reform Act required the court to consider four factors "in determining whether to release a defendant pending trial." *Id.* at 2 (citing 18 U.S.C. § 3142(g)). Those factors, the court explained, include "(1) [the] nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* (quoting *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished opinion)).

16

The court explained the matters that it considered when "consider[ing] defendant's appeal *de novo*." *Id.* at 2, 4. The court "considered the Section 3142(g) factors." *Id.* at 4. It reviewed the magistrate judge's "Detention Order." *Id.* at 2. It reviewed "the recording of the detention hearing." *Id.* And, "[a]s did" the magistrate judge, the district court "closely considered all the evidence of record." *Id.*

The court discussed the presumption of innocence that Cunningham enjoyed and the weight of the evidence against him. *Id.* at 2. The court recognized that Cunningham had "pled not guilty and is presumed innocent of the charge of possession of a firearm by a felon." *Id.* But the court explained that "from a review of the Indictment and the proffer of the Government" that "the weight of the evidence against defendant is strong and does favor detention." *Id.*

The court also discussed in detail Cunningham's history and characteristics, *id.* at 2–4, including those that Cunningham had argued were given insufficient weight by the magistrate judge, *Notice of Appeal and Motion to Revoke Detention Order*, at 6–7. The court found

17

that Cunningham's family relied on his support, noting that he homeschools his children during the week and works as a forklift driver on the weekend.  *Id*. at 2–3.  The court found that Cunningham "has a history of stable employment."  *Id*. at 3.  The court found that Cunningham "has strong ties to the community."  *Id*. at 3.  And the court found that "he has had no violent crimes against persons in the past 16 years."  *Id*. at 3.

After making findings about positive aspects of Cunningham's behavior and ties to the community, the court explained that these components of his "history and characteristics do not outweigh the remaining factors, which indicate that" Cunningham's "release would pose a significant risk to the safety of any other person and the community."  *Id*. at 3.  "[A]lthough" Cunningham "has not committed violent crimes in many years," said the court, "his underlying felony conviction was federal bank robbery by force or violence."  *Id*.  The "probation office," moreover, "recommended detention" based upon numerous risk factors including the defendant's criminal history,

18

substance abuse history, record of compliance with supervision, and criminal activity while under supervision. *Id.*

Cunningham had previously served a term of federal supervised release, and the court noted that it had been revoked. *Id.* at 3. Cunningham has two convictions for driving while impaired more than a decade apart. *Id.* The court described these convictions as "underscor[ing] the danger" Cunningham "poses to the community." *Id.* at 3. "In addition," explained the court, Cunningham "has a long history of misdemeanor convictions for theft, alcohol, and drug-related crimes that aid in justifying his detention in this case." *Id.* "Many of these crimes occurred within ten years of the instant offense." *Id.*

The court also addressed the testimony of Moore, the "defendant's state probation officer," that "she did not believe defendant posed a danger to the community." *Id.* at 3. "[T]he state probation officer's supervision was limited to running his criminal record," noted the court. *Id.* at 4–5. She "had not been to the defendant's home, had no knowledge of whether he had any substance abuse issues, and had no knowledge of whether defendant was in possession of a firearm." *Id.* at

19

4.   The court affirmed the determination of the magistrate judge "in its
entirety," concluding "that the defendant's release would pose a serious
danger to others" and that "no condition or combination of conditions
will reasonably assure the safety of any other person and the
community."  *Id*. at 1, 4.

## SUMMARY OF THE ARGUMENT

The district court properly ordered Cunningham's detention
pending his trial for possession of a firearm by a convicted felon.   The
nature and circumstances of Cunningham's offense, which include his
illegally possessing a gun in public in a car along with an open
container of liquor, reflect a significant danger to the community,
amplified by Cunningham's history of driving while impaired.   And the
evidence of that danger, which includes eyewitness observation and
Cunningham's confession, is strong.   Although Cunningham's history
and characteristics include several recent months of compliance with
state pretrial-release conditions, Cunningham's eleven state and federal
convictions, which span 15 years and include violent and otherwise
dangerous offenses amply support the district court's finding that

20

Cunningham's release would pose a serious danger to others. And the host of violations of pretrial release, supervised release, and state probation conditions that Cunningham has committed overwhelmingly support the court's finding that no combination of release conditions will reasonably assure the community's safety.

## ARGUMENT

**The district court properly ordered Cunningham's pretrial detention.**

### A.    Standard of Review

This Court ordinarily reviews properly preserved issues of law de novo, *see United States v. Campbell*, 94 F.3d 125, 127 (4th Cir. 1996), and the district court's factual findings in connection with an order of pretrial detention or release for clear error. *See United States v. Williams*, 753 F.2d 329, 336 (4th Cir. 1985). It has described the question on appeal as "whether the evidence as a whole supports the conclusions of the proceedings below" and has placed emphasis on the requirement of "deference to the determination of the district court." *United States v. Stewart*, 19 F. App'x 46, 47 (4th Cir. 2001) (unpublished decision). Arguments presented for the first time on

21

appeal are subject to the plain error standard of review. *United States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017). That standard requires Cunningham to prove that "(1) there is in fact an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

## B.    Discussion

The district court properly ordered Cunningham's detention pending his trial for possession of a firearm by a convicted felon. The district court was obligated to detain Cunningham upon finding by clear and convincing evidence "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989) (en banc); 18 U.S.C. § 3142(e).

The district court's finding that "no condition or combination of conditions of release would reasonably assure the safety of any other

person and the community," *Exh. A*, at 1; *Exh. B*, at 2, is not clearly

erroneous.   As the district court correctly explained, *Exh. A*, at 2.

Congress directed the "judicial officer" to consider four factors "in

determining whether there are conditions of release that will

reasonably assure . . . the safety of any other person and the

community."   18 U.S.C. § 3142(g).   Each of these factors supports the

district court's finding.

First, "[t]he nature and circumstances of the offense charged," 18

U.S.C. § 3142(g)(1), demonstrate the risk Cunningham poses to the

public.   Even though Cunningham had previously been convicted of a

felony offense, he illegally possessed a "firearm," 18 U.S.C. § 3142(g)(1),

a fact that Congress deemed "especially significant" in "terms of

dangerousness."   *United States v. Stone*, 608 F.3d 939, 947 (6th Cir.

2010); *United States v. Vorrice*, 277 F. App'x 762, 764 (10th Cir. 2008)

(unpublished decision).   Cunningham is, of course, correct that firearm

possession "takes place in a variety of ways," *Br. of Appellant* 21

(quoting *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 225), but

Cunningham brought his gun, illegally-possessed for "protection," out in

23

public — in a car with an open container of alcohol. *Exh. C* at 2–3. Those facts "raise very real concerns about the potential threat to community safety involved." *Vorrice*, 277 F. App'x at 764. And the multiple convictions Cunningham received for driving while impaired, spanning more than a decade, S.A. 5–6, both amplify the risk revealed by his offense conduct and offer reasons why release conditions will do little to mitigate that risk. Cunningham has demonstrated that the threat of sanctions, even including imprisonment, S.A. 6, has not deterred him from engaging in dangerous conduct.

Second, "the weight of the evidence against" Cunningham, 18 U.S.C. § 3142(g)(2), supports the district court's finding. The district court acted firmly within its discretion in accepting the United States' undisputed proffer. 3B Charles A. Wright et al., *Federal Practice & Procedure* § 766 (4th ed.); *Stone*, 608 F.3d at 949 (citing decisions). That proffer indicated that the eyewitness observation of police and Cunningham's own confession establish that Cunningham was out in public, in a car with an open container, illegally armed for "protection." *Exh. C* at 2–3. The grand jury, moreover, found probable cause to

24

conclude that Cunningham knew "that he had been previously convicted of at least one crime punishable by imprisonment for a term exceeding one year" when he illegally possessed his gun. *Indictment* 1. The district court was correct to find that "the weight of the evidence against defendant is strong." *Exh. A.*, at 2. It is strong evidence of the danger Cunningham presents to the public. And it is strong evidence that limitations that the criminal-justice system has placed on Cunningham's conduct have failed to effectively deter him from dangerous criminal conduct.

Third, Cunningham's "history and characteristics" include both the considerations on which Cunningham primarily relied and many considerations that the court considered significant when ordering Cunningham's detention. 18 U.S.C. § 3142(g)(3). Relevant considerations include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community and community ties." 18 U.S.C. § 3142(g)(3)(A). Considerations specified by statute also include the defendant's "past conduct, history relating to drug or alcohol abuse,

25

criminal history, and record concerning appearance at court proceedings." *Id.*

The district court properly considered the totality of Cunningham's history and characteristics and appropriately found that positive considerations did not outweigh those indicating a danger that release conditions could not appropriately mitigate. *Exh. A*, at 1–3. The Court made detailed findings, consistent with Cunningham's proffer, favorable to Cunningham. *Id.* at 2–3. It found that Cunningham's family relied on his support, he "has a history of stable employment," he "has strong ties to the community," and "he has had no violent crimes against persons in the past 16 years." *Id.* at 3.

Cunningham's decades-long criminal history provides ample support for the district court's finding that, notwithstanding Cunningham's positive achievements, Cunningham's release would pose a significant danger to the community even if he were subject to conditions. *Id.* at 3–4; S.A. 6. Cunningham committed a federal bank robbery, S.A. 5, which he remarkably attempts to minimize as "involv[ing] merely the use of force, violence, or intimidation to take or

26

attempt to take bank property." *Br. of Appellant* 6 n.7. That kind of conduct, of course, poses a substantial danger to banks and their property. More importantly, it poses an enormous danger to the *people* subject to his "force, violence, or intimidation," *id. See United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016). The Court was well justified in concluding that Cunningham had a "[h]istory of *violence* or use of weapons." *Exh. B*, at 8 (emphasis added).

Cunningham's assertion that much of the 15-year criminal history that predated his federal gun offense consisted of "misdemeanor convictions," *Br. of Appellant* 16, misses the mark. His history includes, among other things, two convictions for driving while impaired, one conviction for shoplifting or concealment of goods, and two convictions for larceny, in addition to numerous convictions for drug and alcohol offenses. S.A. 7. Regardless of the extent to which his offenses are labeled felonies or misdemeanors, Cunningham's history reflects a decade and a half of conduct posing serious danger to other people.

27

Cunningham's history of violating multiple forms of judicial supervision, moreover, overwhelmingly supports the district court's finding that "no condition or combination of conditions will reasonably assure the safety of any other person and the community," *Exh. A*, at 1. When Cunningham was previously subject to federal pretrial release, he violated his release conditions promptly and repeatedly. S.A. 5; *May 2005 Detention Order*. After the district court placed him on federal supervised release, Cunningham violated the conditions of that release six different ways, including by committing a new crime. *Revocation Judgment* at 1. Later, he was charged in state court with violating state probation sentences, multiple times. S.A. 6–7.

Cunningham's history of violating release conditions time and again overwhelmingly supports the district court's conclusion that it would not be able to fashion conditions of supervised release that would reasonably assure the safety of the community. The conditions Cunningham proposed at his 2020 detention hearing, *Exh.* C, at 15–16, are similar, if not identical, to conditions that he previously violated or that failed to deter him from crime. He was subject to a search

28

condition, for example, when he illegally possessed drug paraphernalia. *Revocation Judgment* 1.   He was previously required to participate in a drug testing and treatment program, but he violated that condition and other limits on his drug and alcohol use.   *Id*; *compare Exh. C*, at 15–16. He was placed on "bond" and subject to both "home detention" and "electronic monitoring" as a requirement of the federal pretrial release he previously received.   *February 2005 Violation Report*, at 1; *compare Exhibit C*, at 16 (proposing a "bond" and "ankle monitor").   Within a month, Cunningham absconded from his residence without authorization.   *February 2005 Violation Report*, at 1; *May 2005 Detention Order*.   Cunningham's failure in the past to adhere to these conditions and his commission of additional crime while on release well confirm the court's 2020 finding that release conditions would not reasonably assure the safety of the community.

The district court appropriately considered the testimony of Cunningham's "state probation officer," Moore, *Exh. A*, at 3–4.   *Cf. Br. of Appellant* 15–16, 25–26, 31–32.   Moore testified that Cunningham was subject to the "lowest level of supervision," which "includes merely

making sure he has not been charged with a new crime." *Exh. C*, at 6, 9.   She agreed that she would not know if Cunningham had been in possession of contraband in his home that did not give rise to new charges.   *See Id.* at 9.   Her testimony that he had not been charged during his release on his state gun charge — other than his federal indictment — and that he had been employed was both undisputed and corroborated by the report prepared by the district court's own probation office.   S.A. 3, 8.

When Moore testified that she did "not see any concern" based "on the information available to" her, she gave an opinion based almost entirely on information that was otherwise known to the district court and undisputed.   *Id.* at 8.   The district court explicitly considered her testimony "that she did not believe defendant posed a danger to the community."   *Exh. A*, at 3.   But it appropriately recognized the limitations on her knowledge.   *Id.* at 3–4.   And it did not come close to committing a clear error by drawing the conclusion that despite Cunningham's employment and lack of new charges in recent months, Cunningham's offense conduct, his criminal history spanning 15 years,

and his history of repeatedly violating release conditions presented a

danger to the community that release conditions could not

appropriately mitigate.

Finally, "the nature and seriousness of the danger to any person

or the community that would be posed by the person's release," 18

U.S.C. § 3142(g)(4), well supports the district court's detention order.

Cunningham's history, in his words, "involves . . . the use of force,

violence, or intimidation." *Br. of Appellant* 6 n.7.   He has committed

multiple offenses targeting the property of others, ranging from robbery

to larceny to shoplifting.   S.A. 5–7.   And he has a history of repeatedly

engaging in impaired driving, conduct that places the public at great

risk.   S.A. 5–7.   The circumstances surrounding his federal charge,

furthermore, reflect an even greater danger:   Cunningham is credibly

alleged to have placed an open container of liquor in his car, along with

a gun he possessed illegally, despite knowing he had previously been

convicted of a felony.   *Exh. C*, at 2–3.   The danger apparent from

Cunningham's prior conduct reflects the nature and seriousness of the

danger his release would present, particularly in the light of his

31

repeated failure to adhere to release conditions. The district court's finding that Cunningham's release, even on conditions, would "pose a serious danger to others" is well founded. *Exh*. A, at 1–4.

The record refutes Cunningham's contention that "the district court did not consider the nature and circumstances of the offense charged or the nature and seriousness of the danger Mr. Cunningham's release would pose," *Br. of Appellant* 21–23. The district court considered both the "nature and circumstances of the offenses charged" and "the nature and seriousness of the danger to any person or the community that would be posed" by Cunningham's "release," *Exh. A*, 2, 4, explicitly. Cunningham, moreover, when appealing the magistrate judge's finding to the district court argued that the magistrate judge gave *outsized* consideration to Cunningham's "[d]angerousness" and the facts surrounding his charged offense. *See Notice of Appeal and Motion to Revoke Detention Order*, *United States v. Cunningham*, 3–4 No. 3:19CR385 (W.D.N.C. Nov. 3, 2020) (Doc. No. 11). The district court on review considered all of the "Section 3142(g) factors" and entered an

appropriate order addressing the arguments Cunningham presented to it. *Exh A*, at 2–4.

The record also refutes Cunningham's assertion that the district court found that "because Mr. Cunningham presented a safety risk to the community, this necessarily meant no conditions existed to reasonably assure the community's safety." *Br. of Appellant* 16–17 (citing *Exh. A*). The order that Cunningham cites for this assertion contains no such finding. *Exh. A*. To the contrary, the Court separately found that "defendant's release would pose a serious danger to others" *and* that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* at 1, 4. The court, in other words, found what the statute requires, 18 U.S.C. § 3142(e), and the record amply supports its finding.

The record also refutes Cunningham's contention that the district court did not consider the conditions that Cunningham proposed at the detention hearing. *Cf. Br. of Appellant* 18–19. The record makes clear that the magistrate judge listened carefully to Cunningham's argument and assertions, including his proposed conditions, and found

33

that "*no* condition or combination of conditions of release" would
reasonably assure the safety of others. *Exh. C*, at 11–17; *Exh. B*, at 2
(emphasis added). Notably, Cunningham did not assert in his
arguments on appeal to the district court that the magistrate judge had
failed to consider his proposed conditions. *Notice of Appeal and Motion
to Revoke Detention Order*, *United States v. Cunningham*, No.
3:19CR385 (W.D.N.C. Nov. 3, 2020) (Doc. No. 11); *Reply*, *Cunningham*,
No. 3:19CR385 (W.D.N.C. Nov. 5, 2020) (Doc. No. 14). The district
court, nevertheless, reviewed the recording of the detention hearing and
"all the evidence of record," *Exh. A*, at 2, including Cunningham's
proposed conditions. It also found that "no condition or combination of
conditions will reasonably assure the safety of any other person and the
community" in an order that appropriately addressed the arguments
that Cunningham presented to it. *Id.* at 1.

Cunningham's contention, raised for the first time on appeal, that
the district court "failed to account" for "post-treatment rehabilitation"
that Cunningham purportedly experienced after he "completed an 8-
month inpatient drug treatment program in 2012," *Br. of Appellant* 24–

26, is baseless.    Cunningham did not claim that he experienced this "rehabilitation" during the hearing before the magistrate judge or in his appeal to the district court, and the record does not support such a claim.    The section of the pretrial-services report Cunningham cites in support of his claim does not state that Cunningham was rehabilitated. *See* S.A. 4–5.    To the contrary, it states that Cunningham reported using cocaine "[d]aily," and continued using it for years after the 2012 program.    S.A. 4–5.    Cunningham also reported daily alcohol use and regular use of "Cannabinoids," including in the months he was on pretrial release for his 2019 state felon-in-possession charge.    S.J.A. 4–5.    Cunningham's 2019 federal indictment and his 2013 conviction, moreover, indicate that Cunningham continued to commit crimes after completing his 2012 drug-treatment program.    S.J.A. 7.    The record would not have supported Cunningham's claim that he experienced "post-treatment rehabilitation" if he had made it before the district court, *Br. of Appellant* 24; the district court considered all the evidence presented to it, *Exh A.*, at 2; and the court did not come close to committing a plain error by declining to say more about this claim.

35

Finally, Cunningham is correct that the "Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987) (citing 18 U.S.C. § 3142(f)); *see Br. of Appellant* 1–2.   That careful limitation does not help Cunningham, however, because Congress specifically placed his circumstances among those for which detention may be sought.   18 U.S.C. § 3142(f)(1) (authorizing detention to be sought for cases involving "any felony . . . that involves the possession . . of a firearm.").   Even though his circumstances fall within that class, detention is appropriate only because the district court found that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community."   18 U.S.C. § 3142(e).   That finding is well founded.

## **CONCLUSION**

The district court properly ordered Cunningham's pretrial detention.   The United States, therefore, respectfully requests that this Court affirm the district court's detention order.

Respectfully submitted, this 16th day of December, 2020.

R. ANDREW MURRAY
UNITED STATES ATTORNEY
s/ Anthony J. Enright
Anthony J. Enright
NY Bar Number # 4485140
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: Anthony.Enright@usdoj.gov

37

# CERTIFICATE OF COMPLIANCE

1.      This brief has been prepared using Microsoft Word 2010, Century Schoolbook, 14 point typeface.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the memorandum brief contains ___6603___ words.

        I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                                        s/ Anthony J. Enright
                                        Assistant United States Attorney
                                        USAO Charlotte, NC

## **CERTIFICATE OF SERVICE**

I certify that I have this day served a copy of the above upon Defendant herein by serving his attorney of record through electronic case filing.

This 16th day of December, 2020.

s/ Anthony J. Enright
Assistant United States Attorney
USAO Charlotte, NC